UNITED STATES of America, Appellee,

v.

**Frederick DOUGLAS, Appellant.**

No. 91–2141.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 17, 1991.

Decided May 7, 1992.

Rehearing Denied May 29, 1992.

Thomas John O'Flaherty, (argued), Cedar Rapids, Iowa (Anna O'Flaherty, on brief), for appellant.

Daniel Tvedt, (argued), Asst. U.S. Atty., Cedar Rapids, Iowa, for appellee.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and LOKEN, Circuit Judge. .

ROSS, Senior Circuit Judge.

Appellant Frederick Douglas appeals his conviction following a jury verdict finding him guilty of being a felon in possession of a weapon, in violation of 18 U.S.C. §§ 922(g)(1), for which he was sentenced to 120 months imprisonment. On appeal, appellant contends that the district court[1] erred in failing to suppress evidence of the weapon, which he claims was obtained as a result of an unconstitutional search and seizure. Appellant further contends that the prosecutor violated the Jencks Act, that the chain of custody of the weapon was improperly established and that the jury was improperly selected. We affirm.

I.

The record in the instant case establishes that on the evening of January 28, 1990, Officer Solmonson, a fifteen-year police veteran, was patrolling the parking lot of the Gateway Gardens apartments. For almost three years, his job was to protect tenants and to prevent break-ins of apartments and automobiles. At about 11:15 p.m. on January 28, 1990, Solmonson observed the appellant, Frederick Douglas, bent over and backing out of the back seat of a car parked in a parking lot of an adjacent fourplex apartment building just north of the Gateway Gardens complex. Solmonson testified that at this point he assumed that perhaps the appellant owned the car and lived in the fourplex. Solmonson first became suspicious when he observed appellant get out of the car, close the back door, and walk down an embankment into the neighboring Gateway Gardens complex. Solmonson thought it was

---

1. The Honorable David R. Hansen, United States District Judge for the Northern District of Iowa, now United States Circuit Judge for the Eighth Circuit.

odd that a tenant or guest would park in the adjacent lot when there was parking available in front of the Gateway Gardens apartment building.

Solmonson continued to watch as the appellant walked south through the Gateway Gardens parking lot, again passing several apartment buildings without entering. As appellant approached, Solmonson identified himself as a police officer, showed his badge, and asked appellant what he was doing. Appellant responded that he was out for a walk and was staying at the Comfort Inn, which was about three blocks from the Gateway Gardens. When asked what he was doing in the vehicle in the adjacent parking lot, appellant responded that he merely shut a car door he had found open. Given that answer, Solmonson became increasingly suspicious of appellant's activities because he had seen appellant bent over in the back seat of the car.

It is the government's position that Solmonson then asked appellant for identification, at which point appellant provided an out-of-state driver's license with another person's picture on it. According to the government, appellant then provided Solmonson additional identification with still different names.

Based on the foregoing, Solmonson testified that he conducted a patdown search of appellant's outer clothing and felt a heavy object in the right coat pocket. Solmonson reached inside the coat and felt the handgrip and the trigger guard of a gun wrapped in cellophane. As Solmonson began to remove the gun, appellant pushed Solmonson's hand away, began quickly backing away, and reached inside the pocket which held the gun. Solmonson then pulled his own gun and ordered appellant to halt. Appellant refused and continued his attempt to flee. Solmonson followed appellant to the Lancer Lanes parking lot, where appellant hid behind a four foot snowbank. Solmonson requested police assistance from an apartment tenant who called 911. He then followed appellant to the Comfort Inn, where other police officers had arrived. A gun with the handle wrapped in cellophane was later discovered in the snowbank where appellant had been moments earlier. Police also discovered that the right rear window of the car in which appellant had been seen earlier had been broken out.

Before the trial, appellant filed a motion to suppress evidence of the weapon, alleging that the gun had been discovered as a result of an unlawful search and seizure. Following a hearing and recommendation by the magistrate, the district court denied the motion to suppress.

II.

■ Appellant first argues on appeal that the district court erred in failing to suppress evidence of the gun seized on the evening of appellant's arrest. Appellant claims that both the initial stop and subsequent patdown frisk violated the standard set forth in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the Supreme Court approved a temporary seizure for investigation "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." *Id.* at 30, 88 S.Ct. at 1884. The *Terry* Court also instructed that a police officer may conduct a patdown search of the individuals under investigation if the officer has reason to believe that such persons are armed and dangerous. *Id.*

As we have already outlined, Officer Solmonson observed appellant exiting the back seat of a vehicle; appellant did not enter one of the apartment buildings; Officer Solmonson's experience patrolling the apartment complex led him to believe that appellant's activities were not consistent with that of a resident or visitor; Officer Solmonson knew that auto break-ins had occurred in the Gateway Gardens area; and appellant provided an untenable explanation for his contact with the vehicle. In light of Officer Solmonson's experience, these circumstances clearly provided reasonable suspicion that "criminal activity may be afoot."

We also conclude that the circumstances surrounding the stop support the officer's

belief that a further frisk for weapons was warranted. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. at 1883.

Officer Solmonson was warranted in the belief that his safety was in danger in light of the fact that it was late at night; he was alone with appellant in a dimly lit parking lot; and appellant was wearing a long coat which could have concealed a weapon. Officer Solmonson felt he should inspect the car in which appellant had been seen, and in order to do so, he believed a patdown search was prudent to protect his own safety. Based upon these circumstances, we conclude that the patdown search was compatible with the dictates of *Terry. See United States v. Buchannon*, 878 F.2d 1065, 1067 (8th Cir.1989) (the officer was alone and appellant was a larger man, wearing a long winter coat which might have concealed a weapon); *United States v. Crittendon*, 883 F.2d 326, 329 (4th Cir. 1989) ("The hour was late, the street was dark, the officer was alone, and the suspected crime was a burglary, a felony that often involves the use of weapons.") (quoting *United States v. Moore*, 817 F.2d 1105, 1108 (4th Cir.1987)).

There is considerable dispute in the record as to the time that appellant produced the false identification. Officer Solmonson testified that prior to the patdown frisk, appellant produced an out-of-state driver's license with a photo of a person other than appellant. Although the district court credited Officer Solmonson's testimony on this point, there is evidence in the record which calls this finding into question. First, a sworn affidavit signed by Officer Solmonson two days after appellant's arrest, although detailing the circumstances of the arrest, made no mention of

obtaining false identification from appellant. Second, the police investigative narrative, written by Solmonson less than an hour after the arrest, although not clear, arguably indicates that the identification was not produced until after the patdown search.

We do not need to decide this issue, however, for we find that regardless of when the production of the false identification was made, the *Terry* stop and subsequent patdown frisk were justified under the circumstances presented to Officer Solmonson that evening.

### III.

■ Appellant also challenges on appeal the district court's denial of his motion for a new trial based on the prosecution's failure to disclose a copy of Officer Solmonson's sworn affidavit at the suppression hearing, in violation of the Jencks Act. 18 U.S.C. § 3500(b); *see also* Fed.R.Crim.P. 12(i), 26.2(a) (application of Jencks Act to pretrial suppression hearings). The Jencks Act requires that the prosecutor disclose any statement of a witness in the possession of the United States which relates to the subject testified to by the witness on direct examination.[2] We will not overturn a conviction for noncompliance with the Jencks Act where there is no indication of bad faith on the part of the government, nor an indication of prejudice to the defendant. *United States v. Roberts*, 848 F.2d 906, 908 (8th Cir.), *cert. denied*, 488 U.S. 931, 109 S.Ct. 322, 102 L.Ed.2d 340 (1988).

Appellant claims he requested the production of all relevant police statements prior to the suppression hearing, but a copy of Solmonson's sworn affidavit was not disclosed until the day after Solmonson testified at trial. Specifically, appellant claims that the affidavit, which made no mention of appellant's production of false identification, was inconsistent with Solmonson's tes-

---

**2.** Although the United States need not produce Jencks statements prior to a witness' testimony on direct examination, the United States may agree to early discovery of Jencks material, by way of an "open file policy." The United States Attorney's office for the Northern District of

Iowa has agreed to the early disclosure of Jencks material through its open file policy, thereby obviating the need for filing Jencks and other discovery motions. *See United States v. DePuew*, 889 F.2d 791, 793 (8th Cir.1989).

timony at the suppression hearing that the false identification was produced before the patdown search.

Appellant admits that at the suppression hearing he had a copy of the investigative narrative written by Solmonson shortly after appellant's arrest which also failed to mention that appellant produced false identification prior to the patdown search, as well as a copy of Solmonson's prior testimony at the state suppression hearing.

While it is clear that the prosecutor had an obligation to disclose Solmonson's sworn affidavit, any error which may have resulted by the government's failure to do so is harmless in light of our prior ruling that the *Terry* stop and patdown were justifiable regardless of when the false identification was produced. Furthermore, the sworn affidavit was merely cumulative impeachment material, which was not inconsistent with Solmonson's testimony, but simply omitted relevant facts. Because there is no indication of bad faith on the part of the government, nor prejudice to the appellant, we conclude that no reversible Jencks error occurred.

### IV.

■ Next, appellant argues that there was a significant break in the chain of custody of the handgun entered into evidence. He asserts that the officer who found the gun did not write a report, tag or otherwise identify the handgun, and that at least five separate reports identified the weapon found in the snowbank as a .38 caliber handgun, instead of the .32–20 caliber handgun entered into evidence.

In contrast, the government contends that Officer Conrad Vandezandschulp photographed the weapon where it was found in the snowbank, then handed the gun to Identification Officer John Graham at the police station. Officer Graham initially thought the gun was a .38 caliber revolver, but later identified the gun as a .32–20 caliber, Smith and Wesson with serial number 79515. The serial number was recorded in Officer Graham's report and the same weapon was introduced at trial.

We are satisfied that the chain of custody of the handgun was adequately shown. There is no evidence to support appellant's theory that there was a significant break in the chain of custody. We conclude that the district court did not abuse its discretion in admitting the evidence of the handgun. *See United States v. Mullins*, 638 F.2d 1151, 1152 (8th Cir.1981) (abuse of discretion standard).

### V.

Finally, appellant asserts that the district court should have dismissed the indictment based on alleged violations of the local jury selection plan. Although the district court found that appellant had "proved a violation of the Local Plan in that the Voter Registration Section used the list of actual voters instead of those who were registered to vote in compiling the master wheels," the court concluded that there was no violation of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861, *et seq.*, because the Act allows for use of either actual voters or registered voters. We can find no "substantial failure to comply with [the Act]" which would warrant dismissal of the indictment. *See* 28 U.S.C. § 1867(a).

### VI.

Based on the foregoing, the judgment of the district court is affirmed.