

# SUPREME COURT OF MISSOURI
# en banc

STATE OF MISSOURI            )
                                 )

       Respondent,          )
                                 )

vs.                               )        **No. SC93296**
                                 )

TYOKA L. LOVELADY,        )
                                 )

       Appellant.           )

### APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY
**Honorable W. Brent Powell, Judge**

### Opinion issued May 13, 2014

Tyoka Lovelady appeals from a judgment of conviction of possession of a controlled substance. He argues that the trial court erred in overruling his motion to suppress evidence of cocaine base because, although the police had reasonable suspicion to initially stop him when they saw what appeared to be a gun in his waistband, they lacked reasonable suspicion to detain him further while they performed a warrant check after they discovered that the gun was an Airsoft toy gun. This Court disagrees. Even after the officers learned the gun was not real, the additional circumstances surrounding the encounter gave them reasonable suspicion to continue to detain Mr. Lovelady.

## I. STATEMENT OF THE FACTS

On the night of Saturday, May 30, 2009, Officers Chris Smith and Chad Fenwick were patrolling a high-crime area in Kansas City when they observed Mr. Lovelady

riding a bicycle in circles around an intersection. When the officers drove by, Mr. Lovelady waved to them and said, "They went that way," while pointing down the street.

As Mr. Lovelady pointed, Officer Smith observed what appeared to be a handgun protruding from Mr. Lovelady's waistband. Officer Fenwick stopped the patrol car at 10:34 p.m., and both officers exited the vehicle with their firearms drawn and ordered Mr. Lovelady to the ground. Mr. Lovelady cooperated, and the officers disarmed and handcuffed him.

The officers escorted Mr. Lovelady to the front of the car and questioned him about what he meant by saying, "They went that way." He provided no information and did not explain why he had alerted them. The officers then examined the gun and determined that it was an Airsoft toy gun that resembled a real gun.[1] At that point, they called in a warrant check, and within two minutes, at 10:39 p.m., which was approximately five minutes after they first approached Mr. Lovelady, the officers learned that there was a pickup order for him. They immediately placed Mr. Lovelady under arrest and searched him for contraband. Officer Smith found a kitchen knife and a white substance that field tests indicated contained cocaine. The entire sequence of events, from when the officers stopped the patrol car to when they discovered the cocaine base, lasted fewer than ten minutes.

---

[1] Airsoft guns are air-, gas-, or spring-powered guns that shoot plastic BB-style projectiles and imitate firearms.

The State charged Mr. Lovelady with one count of possession of a controlled substance under section 195.202, RSMo 2000. Mr. Lovelady filed a pretrial motion to suppress the evidence that the officers found on him as the fruit of an illegal search in violation of the Fourth Amendment and article I, section 15 of the Missouri Constitution. The trial court held a hearing on the motion at which both officers testified about the arrest. In addition to the facts discussed above, the officers testified that, during the stop, they believed Mr. Lovelady was under the influence of "some kind of foreign substance to his body." Officer Fenwick also testified that it was uncommon to see someone riding a bicycle late at night in that area of Kansas City, and that it was routine to run warrant checks during investigatory stops.

The trial court overruled the motion to suppress. It found the officers' testimony credible and concluded that, even after discovering that the gun was an Airsoft gun, they had reasonable suspicion to support the detention of Mr. Lovelady while they checked to see if he had outstanding warrants. Mr. Lovelady did not contest that the police had a basis to arrest him once the warrant check came back positive or that the cocaine was found during the search incident to his arrest. The court found the discovery of the cocaine was not the result of an unreasonable search.

At a bench trial, the parties stipulated to the evidence presented at the suppression hearing and stipulated that the substance seized from Mr. Lovelady weighed 0.83 grams. The trial court granted Mr. Lovelady a continuing objection to the admission of the evidence seized during the search based on his argument that the police did not continue to have reasonable suspicion after they discovered the gun was an Airsoft gun. The court

found the State had proved its case, found Mr. Lovelady guilty of possession of a controlled substance, and entered judgment against him.

After decision by the court of appeals, this Court granted transfer. *MO. CONST. art. V, § 10.*

## II.   STANDARD OF REVIEW

"This Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling" overruling a motion to suppress *State v. Grayson, 336 S.W.3d 138, 142 (Mo. banc 2011), quoting State v. Pike, 162 S.W.3d 464, 472 (Mo. banc 2005).* This Court defers "to the trial court's determination of credibility and factual findings, inquiring only whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous." *State v. Goff, 129 S.W.3d 857, 862 (Mo. banc 2004).* Whether reasonable suspicion exists is a question of law that this Court reviews *de novo. State v. Norfolk, 366 S.W.3d 528, 534 (Mo. banc 2012).*

## III.   DISCUSSION

The parties agree that officers Smith and Fenwick had reasonable suspicion to make the initial stop of Mr. Lovelady.[2] Their dispute is over whether the officers had reasonable suspicion to justify continuing the investigative stop after learning that the gun was not a real gun, but only an Airsoft gun. Mr. Lovelady argues that the sole reason the

_____

[2] Mr. Lovelady acknowledges in his brief that the officers "arguably had an articulable basis for reasonable suspicion to justify the initial stop."

4

officers detained him was because he appeared to possess a gun, so, once they determined the gun was not real, the sole basis for reasonable suspicion evaporated. And, he asserts, no new facts developed during the initial detention that indicated the existence of criminal activity. The State counters that even after the officers realized the gun was not real, the totality of the circumstances continued to support the officers' reasonable suspicion that a crime still might be afoot.

The Fourth Amendment protects the right of citizens to be free from unreasonable searches and seizures, *U.S. CONST. amend. IV*, and it applies to state actors through the Fourteenth Amendment, *Grayson, 336 S.W.3d at 151 n.4; Wolf v. Colorado, 338 U.S. 25, 27-28 (1949)*. Article I, section 15 of the Missouri Constitution is coextensive with the Fourth Amendment; consequently, "the same analysis applies under both provisions." *Grayson, 336 S.W.3d at 151 n.4.*[3]

---

[3] In addition to the Fourth and Fourteenth amendments and article I, section 15, Mr. Lovelady mentions the Fifth Amendment and article I, section 10 of the Missouri Constitution in the point relied on in his brief. The only reference to either of these provisions in the remainder of the brief, however, is in the opening paragraph of the argument section, which merely repeats the same general statement as the point relied on and does not otherwise discuss the Fifth Amendment or section 10. Much less does his brief present any reason why these provisions are implicated by the facts, nor was either provision cited below. The reference to these provisions in the point relied on may simply be a vestige of an earlier discarded argument. In any event, any claim under these provisions, not being either raised below or supported by argument or authority in this Court, is not preserved for review and provides no basis for relief. *Rule 84.04; State v. Driver, 912 S.W.2d 52, 54 (Mo. banc 1995); Thummel v. King, 570 S.W.2d 679, 684-85 (Mo. banc 1978).*

Warrantless seizures are generally unreasonable and, therefore, unconstitutional, unless an exception applies. *Id.* One common exception is the "*Terry* stop," which permits officers to make a brief investigatory stop if they have a reasonable suspicion that illegal activity has occurred or is occurring. *Terry v. Ohio, 392 U.S. 1, 16 (1968); State v. Waldrup, 331 S.W.3d 668, 672 (Mo. banc 2011).* Under this exception, the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling these suspicions. *Grayson, 336 S.W.3d at 143, quoting Terry, 392 U.S. at 30.* A *Terry* stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop; it "remains valid only so long as it is 'based on reasonable suspicion.'" *Id. at 143, 145, quoting State v. Deck, 994 S.W.2d 527, 534 (Mo. banc 1999).*[4] A *Terry* stop is proper when: (1) the circumstances support a finding of reasonable suspicion justifying the initial stop and (2) the officer's actions were reasonably related in scope to the circumstances that justified the interference. *Terry, 392 U.S. at 19-20; Waldrup, 331 S.W.3d at 673.*

Reasonable suspicion is a less stringent standard than probable cause. *Pike, 162 S.W.3d at 473.* Reasonable suspicion is present when "a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal

---

[4] Because this Court determines the officers did have continued reasonable suspicion, it does not reach the State's alternative arguments that: (1) the officers would have been entitled to check for warrants even if reasonable suspicion had dissipated once the officers learned the gun was not a real gun; and (2) the results of the search were admissible even if reasonable suspicion had dissipated because the officers did not know they were engaging in plainly improper activity.

activity may be afoot." *Waldrup, 331 S.W.3d at 673, quoting State v. Mack, 66 S.W.3d 706, 709 (Mo. banc 2002).* Suspicion is reasonable if the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry, 392 U.S. at 21; Grayson, 336 S.W.3d at 143.*

When evaluating the validity of a *Terry* stop, the trial court must consider the totality of the circumstances. *Grayson, 336 S.W.3d at 143.* This approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu, 534 U.S. 266, 273 (2002)* (internal quotation omitted). As with all Fourth Amendment claims, whether an officer lacked reasonable suspicion "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon, 472 U.S. 463, 470-71 (1985)* (internal quotations and citations omitted). Conduct that is innocent when considered in isolation may support a showing of reasonable suspicion. *United States v. Sokolow, 490 U.S. 1, 9-10 (1989).* In the context of *Terry* stops, "The relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id. at 10.*

The parties agree that reasonable suspicion justified the initial stop. Viewed in the light most favorable to the trial court's order, the evidence shows that the many factors that supported the initial stop in addition to the belief that there was a real gun were

adequate to support the continued existence of reasonable suspicion after the officers determined the gun was not real. The United States Supreme Court has recognized that conduct that appears innocent in itself may, under the circumstances in which it occurs, support a showing of reasonable suspicion. *Sokolow, 490 U.S. at 9-10.* A reasonable officer might believe that a person would carry such a realistic-looking Airsoft gun in the odd circumstances noted with the intent that other people believe he had an actual gun in order to help him carry out a crime. For example, a robber may use the appearance of being armed to place his victim in fear and compel the victim to comply with his demands. *See State v. Hand, 305 S.W.3d 476, 478-81 (Mo. App. 2010)* (involving realistic-looking pellet gun used to threaten store employee and commit robbery)*; Lewis v. State, 24 S.W.3d 140, 144-45 (Mo. App. 2000)* (describing how toy guns can be used to commit armed robbery by giving the perpetrator the appearance of being armed). In addition, Mr. Lovelady was riding his bicycle in circles in an intersection late at night in an area of high crime, attempted to direct the officers away from the intersection by saying, "They went that way," but later was unable to explain what he meant, and appeared to be intoxicated.

The totality of the facts available to the officers after they learned the gun was not real and the rational inferences deducible from those facts provided an objective basis for a police officer to reasonably suspect Mr. Lovelady was engaged in illegal activity. The officers' continued suspicion of Mr. Lovelady during the few minutes it took to request and process the warrant check was reasonable and, therefore, did not violate the Fourth Amendment.

## IV.  CONCLUSION

The trial court did not clearly err in overruling Mr. Lovelady's motion to suppress evidence or his objections to the introduction of that evidence.  The judgment is affirmed.

_____

**LAURA DENVIR STITH, JUDGE**

All concur.