

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,                    )
                                      )
                    Respondent,       )
                                      )
    vs.                               )      No. SD32878
                                      )      Filed:  September 26, 2014
LARRY LEE SMITH, JR.,                 )
                                      )
                    Appellant.        )


APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable Gayle L. Crane, Circuit Judge


**<u>AFFIRMED</u>**

Larry Lee Smith, Jr. ("Smith"), appeals his conviction, in a bench-tried case, of the class B felony of possession of a controlled substance with the intent to distribute in violation of section 195.211.[1]  Finding no merit to Smith's claims, we affirm the judgment of the trial court.

---

[1] All references to statutes are to RSMo 2000, unless otherwise indicated.

## Facts and Procedural Background

In reviewing the trial court's denial of a motion to suppress evidence, and objections to that evidence at trial, we consider the evidence presented at the suppression hearing and at trial. *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). Viewed in the light most favorable to the judgment, disregarding contrary evidence and inferences, the evidence presented at trial was as follows. *State v. Foster*, 392 S.W.3d 576, 578 (Mo.App. S.D. 2013).

On the night of December 31, 2011, Carthage Police Officer Nathan Moore ("Officer Moore"), while driving his patrol car, noticed a vehicle abort a turn into a driveway, then make the first two available turns after he began following it. The car eventually pulled to the curb, turned off its lights, and parked. Smith, who was riding in the front-passenger seat, exited the vehicle and quickly approached a nearby house. After reaching the front door, Smith paused for a few moments looking at his cell phone. At that time, Officer Moore recognized Smith as a known drug user and dealer. Smith knocked on the front door, and after briefly conversing with two individuals in the house who shook their heads "no," Smith turned around, saw Officer Moore's car, and instead of returning to the car in which he had been riding, he briskly walked away from the house through the yards of adjoining houses.

Officer Moore pulled up next to Smith, exited his patrol car, and called Smith over to his car. Officer Moore instructed Smith to place his hands on the patrol car so that Officer Moore could perform a *Terry* search[2] for weapons on Smith's person. Smith initially complied but as Officer Moore touched Smith, Smith quickly took his right hand off the hood of the patrol car and reached for his right waistband and pocket area. Officer Moore grabbed Smith's right hand

---

[2] The term "*Terry* search" originates from the U.S. Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

and tried to place it behind his back while giving Smith verbal commands to stop resisting. Instead, Smith stiffened his right arm, leading to a brief struggle.

Officer Moore shoved Smith forward toward the hood of his car, stepped back, and fired his taser at Smith. Thereafter, Officer Moore was able to handcuff Smith and place him under arrest for resisting arrest. In Officer Moore's search of Smith, he found a rolled marijuana cigarette in Smith's right-front pocket. Officer Moore then placed Smith in the back of his patrol car.

Officer Moore approached the driver of the vehicle Smith had been riding in, and she consented to a search of her vehicle. Officer Moore found a vacuum-sealed bag containing 158.4 grams of marijuana underneath the front-passenger seat where Smith had been sitting. Smith then began yelling from the back of the patrol car, although Officer Moore could not understand what he was saying. Officer Moore then read Smith his *Miranda*[3] rights, which Smith indicated he understood. Smith stated that the marijuana in the vehicle was his, he had purchased it for $400, intended to sell it, and that the driver had nothing to do with the drugs.

In pre-trial motions to suppress evidence and statements, and through objections at trial, Smith preserved the issue of whether the marijuana found on Smith's person, the marijuana found in the vehicle, and Smith's confession, should be excluded on the basis that Officer Moore did not have reasonable suspicion to detain Smith or perform a *Terry* stop and search. Smith waived his right to a jury trial and was then tried before the court.

Over Smith's objections at trial, the trial court concluded that based on the totality of the circumstances, Officer Moore had reasonable suspicion that illegal activity occurred or was occurring at the time Smith was stopped. Smith was found guilty of possession of a controlled

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

substance with the intent to distribute and sentenced to eight years in the Department of Corrections.

Smith contends that the trial court erred in overruling his motions to suppress evidence of the drugs found on his person and in the car, Smith's confession, and in overruling his objections at trial, because Officer Moore had no reasonable suspicion Smith was involved in criminal activity at the time Smith was detained and searched.

The issues for our determination are:

1.  Did the trial court clearly err in concluding that Officer Moore had reasonable suspicion that criminal activity had occurred or was occurring justifying his investigatory detention of Smith?

2.  Did the trial court clearly err in concluding that Officer Moore had reasonable suspicion that Smith was armed and presently dangerous warranting Officer Moore's search of Smith after Smith was detained?

## Standard of Review

"This Court reviews a trial court's ruling on a motion to suppress in the light most favorable to the ruling, disregarding any contrary evidence or adverse inferences." ***State v. Waldrup***, 331 S.W.3d 668, 672 (Mo. banc 2011). "The inquiry is limited to determining if the decision is supported by substantial evidence, whether that evidence is presented at the suppression hearing itself or during trial." ***Id.***

"While '[a] trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous,' a determination as to whether conduct violates the Fourth Amendment is an issue of law that this Court reviews *de novo*." ***Id.*** (quoting ***State v. Sund***, 215 S.W.3d 719, 723 (Mo. banc 2007)).

## Analysis

### *Did Officer Moore Have Reasonable Suspicion Warranting His Investigatory Detention of Smith?*

"The Fourth Amendment protects the right of citizens to be free from unreasonable searches and seizures . . . and it applies to state actors through the Fourteenth Amendment[.]" ***State v. Lovelady***, 432 S.W.3d 187, 190 (Mo. banc 2014) (internal citation omitted). "Article I, section 15 of the Missouri Constitution is coextensive with the Fourth Amendment; consequently, 'the same analysis applies under both provisions.'" ***Id.*** (quoting ***State v. Grayson***, 336 S.W.3d 138, 142 (Mo. banc 2011)).

"Warrantless seizures are generally unreasonable and, therefore, unconstitutional, unless an exception applies." ***Lovelady***, 432 S.W.3d at 191. Nevertheless, under ***Terry***, one exception to this general rule is an officer may make a brief investigatory stop if the officer is able to point to "specific and articulable facts" that, taken together with rational inferences from those facts and the officer's own knowledge and experience, support a "reasonable suspicion" that illegal activity has occurred or is occurring. ***Terry***, 392 U.S. at 21. "The existence of 'reasonable suspicion' is determined objectively by asking whether the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate." ***Waldrup***, 311 S.W.3d at 673 (internal quotations and citations omitted); ***Terry***, 392 U.S. at 20.

Reasonable suspicion that "will justify the minimally intrusive '*Terry*' stop is present when a police officer observes *unusual conduct* which leads him reasonably to conclude *in light of his experience* that criminal activity may be afoot." ***Waldrup***, 331 S.W.3d at 673 (internal quotations and citations omitted) (emphasis in original); ***Terry***, 392 U.S. at 30. "[A] court must examine the totality of the circumstances in order to evaluate whether the standard for

'reasonable suspicion' has been met." ***Waldrup***, 331 S.W.3d at 673. Evaluation of relevant factors in isolation from each other does not take into account the totality of the circumstances. ***State v. Peery***, 303 S.W.3d 150, 154 (Mo.App. W.D. 2010) (citing ***U.S. v. Arvizu***, 534 U.S. 266, 273 (2002)).

Utilizing these principles, we observe that on New Year's Eve night, Officer Moore witnessed a car abort a turn into a driveway then make the first two available turns after he began following it. The car then pulled over and parked. Smith, whom Officer Moore recognized as a known drug dealer and user, exited the car, quickly approached a house, and paused to look at his cell phone before knocking on the front door. After two individuals answered the door, briefly conversing and shaking their heads "no" at Smith, Smith turned around, saw Officer Moore's car, and instead of returning to the car in which he had been riding, he briskly walked away from the house through the yards of adjoining houses.

These facts observed by Officer Moore constitute "*unusual conduct* which [led] him reasonably to conclude *in light of his experience* that criminal activity may be afoot." ***Waldrup***, 331 S.W.3d at 673 (internal quotations and citations omitted) (emphasis in original); ***Terry***, 392 U.S. at 30.

"Reasonable suspicion is a less stringent standard than probable cause." ***Lovelady***, 432 S.W.3d at 191. "Conduct that is innocent when considered in isolation may support a showing of reasonable suspicion." ***Id.*** at 192. "The relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." ***Id.*** (quoting ***United States v. Sokolow***, 490 U.S. 1, 9-10 (1989)). Further, "conduct that appears innocent in itself may, under the circumstances in which it occurs, support a showing of reasonable suspicion." ***Id.***

6

Missouri cases have noted that "'[n]ervous, evasive behavior is [another] pertinent factor in determining reasonable suspicion.'" **State v. Crabtree**, 398 S.W.3d 57, 60 (Mo.App. W.D. 2013) (quoting **Illinois v. Wardlow**, 528 U.S. 119, 124 (2000)). Similarly, while knowledge of past criminal activity alone is insufficient to give rise to reasonable suspicion, that "can be *one* factor in the reasonable suspicion analysis." **Grayson**, 336 S.W.3d at 146 (internal quotation and citation omitted) (emphasis in original); *see also* **United States v. Sandoval**, 29 F.3d 537, 542 (10th Cir. 1994).

In considering the totality of the circumstances, based on the record before us, we cannot conclude that the trial court clearly erred.

Officer Moore observed conduct from which he could deduce that Smith was attempting to evade contact with Officer Moore—the car in which Smith was a passenger made the first two available turns after being followed by a patrol car. After the car parked and turned out its lights, Smith quickly approached a nearby house. Instead of immediately knocking on the front door, he paused and looked at his cell phone. When he did knock, two individuals emerged who did not appear to know Smith, shaking their heads "no" at him.

Rather than returning to the parked car that dropped him off, Smith began walking away at a quick pace. Officer Moore could have reasoned that if Smith were mistakenly at the wrong house, he would have returned to the car waiting at the curb to inform the driver of the situation, or at least to seek further transportation to his intended destination. This is particularly so on a dark New Year's Eve night. Likewise, this observation would have buttressed Officer Moore's suspicion of Smith's attempted evasion.

Here, Smith's apparent evasiveness, *combined* with Officer Moore's knowledge of Smith's status as a drug user and dealer, tip the scales in favor of reasonable suspicion. Based on

7

Officer Moore's knowledge of Smith's prior drug offenses, he could reasonably suspect that Smith's apparent evasion was borne out of interest in concealing illegal activity rather than an innocent desire to avoid contact with a police officer. In arriving at this conclusion, we are mindful that separately and alone, nervousness or prior drug offenses are insufficient to constitute reasonable suspicion. *Smith*, 373 S.W.3d at 506; *Grayson*, 336 S.W.3d at 146. We further re-emphasize that reasonable suspicion is determined by examining the facts of each case based on the totality of the circumstances. *Peery*, 303 S.W.3d at 154.

The trial court did not clearly err in finding that Officer Moore had reasonable suspicion justifying his investigatory detention of Smith.

### Did Officer Moore Have Reasonable Suspicion Justifying His Terry Search of Smith?

Whether an officer is warranted in performing a *Terry* search is a two-pronged analysis. First, the officer must "observe[] unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot[.]" *Terry*, 392 U.S. at 30. We have already determined that Officer Moore had reasonable suspicion at the time he detained Smith. Second, the officer must have a reasonable suspicion that "the persons with whom he is dealing may be armed and presently dangerous[.]" *Id.*

The rationale for the *Terry* exception is to provide for the safety of the officer and the public. A *Terry* search

> permit[s] a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

8

*Id.* at 27 (internal citations and footnotes omitted).

Smith's evasive actions, combined with Officer Moore's knowledge of Smith's status as a drug user and dealer, were sufficient for a reasonably prudent man in the circumstances to be warranted in the belief that his safety or that of others could be in danger.

"[I]t is reasonable for an officer to believe that an individual may be armed and dangerous when that individual is suspected of being involved in a drug transaction because weapons and violence are frequently associated with drug transactions." *United States v. Cash*, 378 F.3d 745, 748 (8th Cir. 2004) (internal quotation and citation omitted). The time of day, location, and whether an officer is alone are relevant considerations in determining whether an officer reasonably believed he was in danger. *See e.g.*, *United States v. Douglas*, 964 F.2d 738, 741 (8th Cir. 1992) ("Officer Solmonson was warranted in the belief that his safety was in danger in light of the fact that it was late at night; he was alone with appellant in a dimly lit parking lot; and appellant was wearing a long coat which could have concealed a weapon.").

Here, at the time Officer Moore instigated the *Terry* search, Officer Moore was alone, it was night, and it was dark because there were no streetlights. Further, the driver remained sitting in her parked car while Officer Moore detained Smith. Officer Moore was aware of Smith's status as a drug user and dealer and might reasonably suspect that Smith was armed on that basis. A reasonably prudent man in Officer Moore's circumstances would be warranted in the belief that his safety or that of others was in danger. *Terry*, 392 U.S. at 27.

The trial court did not clearly err in holding that Officer Moore had reasonable suspicion warranting his *Terry* search of Smith.

Because Officer Moore's *Terry* stop and search of Smith were founded on reasonable suspicion, the drugs found on Smith's person, the drugs found in the driver's car, and Smith's confession were not fruits of the poisonous tree and, therefore, not subject to exclusion.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., C.J./P.J. - OPINION AUTHOR

JEFFREY W. BATES, J. - Concurs

DANIEL E. SCOTT, J. - Concurs