WILLIAM W. FRANCIS, JR., J.-OPINION AUTHOR
Melissa D. Atkinson ("Atkinson") appeals her conviction for driving while intoxicated ("DWI") per section 577.010,[1] and failing to drive on the right side of the road per section 304.015. In two points, Atkinson contends the trial court erred in rejecting her motion to suppress on the basis that there was no reasonable suspicion for the traffic stop, and in overruling her motion for judgment of acquittal as there was no substantial evidence that Atkinson violated section 304.015. Finding no merit to these points, we affirm.
Facts and Procedural History
On July 8, 2014, Atkinson was arrested for "operat[ing] motor vehicle in an intoxicated condition-drugs," and "[f]ailed to drive on right ... half of roadway on road of sufficient width." The State later charged Atkinson, by amended information, with the class B misdemeanor of DWI in that Atkinson operated a motor vehicle while under the influence of methadone[2] (Count I), pursuant to section 577.010; and the class C misdemeanor of failure to drive on the right half of the roadway, when the *658 roadway was of sufficient width (Count II), pursuant to section 304.015.
Atkinson filed a "Motion to Suppress Evidence Obtained from Unlawful Detention and Seizure," asserting, in part, that the "detention and seizure were conducted without reasonable suspicion or probable cause of criminal activity"; Atkinson did not consent to the detention or seizure; and the seizure was not incident to a lawful arrest.
On February 17, 2016, a hearing was held on Atkinson's motion. The trial court heard testimony from Deputy Elyse Riley ("Deputy Riley") and Corporal Bradley Wallace ("Corporal Wallace"). Deputy Riley testified she had been a deputy with the Greene County Sherriff's Department for five years and had been assigned to the DWI specialist task force for two-and-a-half years prior to leaving the department in March 2015. She received substantial training in "driver detection, impaired driving and how to process DWIs through standardized field sobriety testing"; went through "advanced roadside impairment detection education"; and became certified as a drug recognition evaluator ("DRE"). At the time of her departure from the department, she had made approximately 415 DWI arrests.
On the date of the incident, Deputy Riley was the passenger in an unmarked vehicle driven by Corporal Wallace. They were stopped at a traffic light in the left north-bound lane when she observed a driver (later identified as Atkinson) beside them in the right-hand lane who was "slouched over[,]" and "searching for her mouth with a cigarette" in a "very slow and methodical" manner. When the light turned green, Deputy Riley observed Atkinson move "over to the right onto the shoulder past the fog line[3] and then started driving on the shoulder as if it were an actual driving lane of traffic." Atkinson was "almost ... entirely" on the shoulder and the driver's side tires "would probably have been the only part of the car" not over the fog line. Atkinson was on the shoulder for "less than 30 seconds, probably closer to 20." This included the period of time it took for Atkinson to "correct slightly back into the lane[.]"
Deputy Riley told Corporal Wallace to conduct a traffic stop. Corporal Wallace moved behind Atkinson and turned on his lights. Corporal Wallace made initial contact with Atkinson. Thereafter, Deputy Riley, with Atkinson's consent, conducted a "DWI investigation at the roadside[.]" At the conclusion, Deputy Riley placed Atkinson under arrest.
On cross-examination, Deputy Riley admitted that the entire incident occurred "in a matter of seconds." She testified that Atkinson drove on the shoulder "far enough to where that's a very unusual action to take."
Corporal Wallace testified the decision was made to make the traffic stop "due to a lane violation." He observed Atkinson's vehicle drive "completely out of the driving lane onto the shoulder." When Atkinson's vehicle began crossing over the fog line, he slowed down and pulled in behind her vehicle. He then activated his lights and Atkinson came to a stop.
After hearing testimony and argument, the trial court overruled Atkinson's motion to suppress, finding that there was "reasonable suspicion" for the traffic stop.
Trial commenced on February 23, 2017.[4] Deputy Riley testified that while stopped *659 at a traffic light, she observed Atkinson "attempting to find her mouth with a cigarette that she had lit in her hand." Deputy Riley explained that, as a former smoker, you "have a motion where you take the cigarette, usually in two fingers ... and put it directly to your lips. Instead, Atkinson was "searching, like by tapping it to her face and sliding it to her mouth[,]" which "indicated unusual behavior." She then directed Corporal Wallace's attention to Atkinson as they waited for a green light. Once the light turned green, Atkinson proceeded a little ahead of their car and proceeded to "move[ ] over so both passenger side tires had crossed over the solid [fog] line into ... the shoulder of the road." Atkinson stayed on the other side of the fog line for a "few seconds[,]" and then the vehicle corrected itself onto the forward driving line. A traffic stop of Atkinson's vehicle was then initiated.
The prosecutor then asked Deputy Riley, "Now who made contact with the driver first?" Atkinson's attorney made an objection at this point stating:
I am going to object to any testimony from this point forward. I'd previously filed a motion to suppress. We took that up. I know it was overruled, but I'd like to show my objection that any of the-any observations or evidence after this point in time are in violation of my client's fourth amendment rights under the-under the Missouri constitution and also the bill of rights, the Missouri constitution, Missouri statutes and State of Missouri v. Beck, which we had previously argued. So-and I'd also ask the Court to show that as a continuing objection throughout.
The trial court overruled the objection, but noted it to be a continuing objection.
Deputy Riley continued her testimony and indicated it was Corporal Wallace who made first contact with Atkinson. After making contact, Corporal Wallace returned to the patrol car indicating he did not smell any alcohol. Deputy Riley then made contact with Atkinson observing that Atkinson had poor finger dexterity when trying to remove her driver's license, slightly slurred speech, bloodshot and watery eyes, and had what she described as a "staring look." These indicators were consistent with a substance impairment, but Deputy Riley could not make that determination based on those indicators alone. Atkinson consented to field sobriety testing, and Atkinson's test performances were consistent with intoxication. Based on the sobriety test results and all other factors present, as well as her experience as a DRE, it was Deputy Riley's belief that Atkinson was under the influence of some type of substance. Deputy Riley then read Atkinson her Miranda[5] rights and placed her under arrest for "driving while intoxicated due to suspicion of drug use[,]" and she was transported to the Greene County jail.
Deputy Riley interviewed Atkinson at the jail. Atkinson admitted to driving the vehicle at the time of the stop, but denied being under the influence of alcohol. Atkinson did admit to taking methadone and Celexa.[6] After reading Atkinson her implied consent rights, Deputy Riley released Atkinson to Deputy Randy Foster ("Deputy Foster"), who performed a drug recognition evaluation. A blood draw was also *660 conducted at that time.[7]
Corporal Wallace testified consistent with his testimony at the motion to suppress hearing. He added that he had approximately 24 hours of DWI training, and had conducted approximately 50 DWI investigations. He confirmed he pulled in behind Atkinson's vehicle after Deputy Riley told him that "she had observed the female in the vehicle with a poor motor[-]skilled attempt to put a cigarette in her mouth and that she had seen the car swerve." Atkinson's vehicle then drove "completely off the roadway onto the shoulder[ ]" with the tires "completely outside the [fog] line[.]" This lasted for a "half mile maybe[,]" and led him to initiate a traffic stop. In his limited interaction with Atkinson, he noticed swaying and slurred speech, and believed her to be intoxicated.
On cross-examination, Corporal Wallace confirmed that Atkinson was on the shoulder for more than two seconds and then made a "slow recovery back into the lane."
Deputy Foster, the drug recognition evaluator in the case, testified that Atkinson was initially cooperative, but then became defensive. He indicated she had poor coordination, and her face was droopy, which is a symptom of narcotic analgesics. Atkinson admitted to taking 55 milligrams of methadone at 5:00 a.m., and 40 milligrams of Celexa at 7:00 p.m. Deputy Foster re-administered the field sobriety testing. Atkinson performed poorly on this testing, and based on the totality of the evaluation, it was his opinion that Atkinson was "too impaired to drive."
Atkinson put on no evidence, but made oral motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence. The trial court denied both motions. After hearing closing argument, the trial court took the matter under advisement.
On March 13, 2017, the trial court found Atkinson guilty on both counts,[8] and Atkinson was sentenced thereafter. This appeal followed.
In two points on appeal, Atkinson asserts the trial court erred in overruling her motion to suppress because the Officer Riley's observations did not rise to the level of reasonable suspicion necessary to justify a traffic stop; and in overruling her motion for judgment of acquittal because there was insufficient evidence that Atkinson was guilty of failing to drive on the right half of the roadway.
Standard of Review
Atkinson's Points I & II implicate separate and distinct standards of review. Respectively, the applicable standards are as follows.
A trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous. The trial court's ruling will be deemed clearly erroneous if, after review of the entire record, this Court is left with the definite and firm impression that a mistake has been made. This Court defers to the trial court's factual findings and credibility determinations and considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling. Whether conduct violates the Fourth or Fifth Amendments is a question of law that this Court reviews de novo .
*661 State v. Lammers , 479 S.W.3d 624, 630 (Mo. banc 2016).
Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt. This Court considers all evidence in the light most favorable to the verdict and grants the State all reasonable inferences. Contrary evidence and inferences are disregarded. The Court will not supply missing evidence or grant the State unreasonable, speculative, or forced inferences.
Id. at 632.
Analysis
Point I: Reasonable Suspicion for Traffic Stop
In Atkinson's first point, she argues that the trial court "erred in overruling [Atkinson's] motion to suppress and admitting the evidence found as a result of the traffic stop," in that " 'tapping a cigarette to her face and sliding it to her mouth,' as well as crossing over the fog line onto the shoulder of the road, did not rise to the level of reasonable suspicion necessary to justify a traffic stop."
The Fourth Amendment protects the right of citizens to be free from unreasonable searches and seizures ... and it applies to state actors through the Fourteenth Amendment. Article I, section 15 of the Missouri Constitution is coextensive with the Fourth Amendment; consequently, the same analysis applies under both provisions.
Warrantless seizures are generally unreasonable and, therefore, unconstitutional, unless an exception applies. Nevertheless, under Terry [v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ], one exception to this general rule is an officer may make a brief investigatory stop if the officer is able to point to specific and articulable facts that, taken together with rational inferences from those facts and the officer's own knowledge and experience, support a reasonable suspicion that illegal activity has occurred or is occurring. The existence of reasonable suspicion is determined objectively by asking whether the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate.
Reasonable suspicion that will justify the minimally intrusive Terry stop is present when a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. A court must examine the totality of the circumstances in order to evaluate whether the standard for reasonable suspicion has been met. Evaluation of relevant factors in isolation from each other does not take into account the totality of the circumstances.
State v. Smith , 448 S.W.3d 835, 839-40 (Mo.App. S.D. 2014) (internal quotations and citations omitted) (emphasis in original).
In her analysis, Atkinson independently addresses those facts she deems relevant to reasonable suspicion: (1) her ponderous interaction with a cigarette, and (2) driving over the fog line. This "divide and conquer" strategy has been rejected-and is rejected here-as it "does not take into account the totality of the circumstances" by which reasonable suspicion is evaluated. Id. at 840.
Viewing the "evidence and reasonable inferences in the light most favorable to the trial court's ruling,"[9] as we must, the *662 record reveals as follows. Officers were waiting at a stoplight. They observed that Atkinson-also stopped-was "slouched over" in the driver's seat of her car. Atkinson was observed having difficulty putting her cigarette to her mouth. "Slow[ly]," "methodical[ly]," Atkinson explored for her mouth with the cigarette. She would miss-"tapping [the cigarette] to her face"-and then reorient the cigarette closer to her mouth by "sliding" it across her face. The light turned green, and officers observed Atkinson drive "over to the right onto the shoulder past the fog line, and then started driving on the shoulder as if it were an actual driving lane of traffic." The driver's side tires were "the only part of the car" not over the fog line. Atkinson made a "slow recovery back into the lane" of traffic, succeeding after an approximately twenty-second deviation over the fog line and shoulder.
These circumstances were sufficient to warrant reasonable suspicion for a traffic stop. "The relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." Smith , 448 S.W.3d at 840 (internal quotation and citation omitted). Officers observed unusual conduct suggestive of intoxicated driving. Atkinson's difficulties finding her mouth with a cigarette, her slouched posture, her deviation over the fog line and substantial (though not entire) deviation onto the shoulder, and her slowness to correct course (approximately twenty seconds), are-in the totality of the circumstances-sufficient indicia that criminal activity may have been afoot such as to warrant the officers' traffic stop. Id. at 839-40.
The trial court did not err in finding that there was reasonable suspicion for the traffic stop, and did not clearly err in admitting the resulting evidence at trial. Point I denied.
Point II: Sufficient Evidence for Conviction per Section 304.015
In her second point, Atkinson argues that the trial court erred in overruling her motion for judgment of acquittal, in that there was insufficient evidence to support her conviction for failure to drive on the right half of the roadway per section 304.015.
Section 304.015.2 states, in relevant part: "Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway[.]"
Atkinson reckons that "[t]he fog line and shoulder are on the right side of a roadway." Thus, she postulates, if she were "driving her car improperly at all, the impropriety was driving too far to the right, not failing to drive on the right half." We cannot disagree with Atkinson on this particular-the evidence chronicles Atkinson's rightward deviation, not leftward.
This said, "roadway" is defined as "that portion of a state highway ordinarily used for vehicular travel, exclusive of the ... shoulder [.]" § 304.001, RSMo Cum.Supp. 2002 (emphasis added). Atkinson's (admitted) rightward deviation is thus comprehended by section 304.015, per the definition of "roadway" applicable to that section.
There was sufficient evidence to support Atkinson's conviction per section 304.015. The trial court did not err in overruling her motion for judgment of acquittal. Point II is denied.
The judgment of the trial court is affirmed.
*663 NANCY STEFFEN RAHMEYER, C.J./P.J.-CONCURS
DANIEL E. SCOTT, J.-CONCURS

All references to statutes are to RSMo Cum.Supp. 2010, unless otherwise indicated.

According to the record, methadone is considered to be a central nervous system ("CNS") drug with depressant properties. It is often used for narcotic maintenance or as a pain medication.

The term "fog line" refers to the "white line" painted on a roadway that marks the edge of the legally drivable portion of the roadway. These terms are used interchangeably in the record, but for purposes of this opinion, we use the term "fog line."

The trial court sustained the State's oral motion for leave to amend the amended information by interlineation to replace "methadone" with "drug or drugs."

Miranda v. Arizona , 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

According to the record, Celexa is an anti-depressant. In the DRE program, it is classified as a "CNS depressant."

The Missouri State Highway Patrol crime lab found methadone to be present in the blood sample. According to the record, methadone can be intoxicating to an individual, and can stay in a person's system from a day to several days depending on the person's frequency of use and the dosage.

Atkinson did not file a motion for new trial.

Lammers , 479 S.W.3d at 630.