# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3485

_____

United States of America,       *
                                       *

     Plaintiff - Appellee,     *

                                       *   Appeal from the United States

v.                               *   District Court for the

                                       *   Eastern District of Missouri.

Eric Gray,                   *

                                       *

     Defendant - Appellant.    *

_____

Submitted:  February 15, 2000

Filed:  June 12, 2000

_____

Before RICHARD S. ARNOLD, HEANEY, and LOKEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

After the district court denied his motion to suppress, a jury convicted Eric Gray of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Gray appeals, arguing the firearm was discovered during an unconstitutional search and seizure.  Concluding the police lacked reasonable suspicion that criminal activity was afoot when they frisked Gray during a consensual stop, we reverse.

At approximately 9:45 PM on January 8, 1998, St. Louis Police Officers David Ellison and Lawrence Little were patroling St. Louis's Eighth District, driving east

along the 3900 block of Maffitt Avenue, an area in which drug activity and prostitution were common. The officers observed three women Ellison assumed were prostitutes. Ellison also saw Gray walking west along the south sidewalk. When Gray noticed the police vehicle, he crossed the street "in a hurried fashion" and continued walking west on the opposite side of the street. The officers drove around the block. When they returned to Maffitt Avenue, Gray was standing at approximately 3965 Maffitt. The officers exited their squad car and approached Gray, who identified himself, stated that he lived nearby, and told the officers he was waiting for a friend. Ellison then did a pat-down search of Gray over his winter coat. Feeling a hard object he believed was a gun, Ellison lifted Gray's coat and seized a .38-caliber revolver. As a felon in possession, Gray was indicted for violating § 922(g)(1). He was convicted and sentenced to 188 months in prison after the district court denied his pre-trial motion to suppress. That ruling is the only issue on appeal. We review whether Officer Ellison's pat-down search was constitutionally reasonable *de novo*. See Ornelas v. United States, 517 U.S. 690, 699 (1996).

The law enforcement justification for a pat-down search or protective frisk is officer safety. See United States v. Davis, 202 F.3d 1060, 1062 (8th Cir. 2000). A protective frisk is both a search and a seizure for Fourth Amendment purposes. See Terry v. Ohio, 392 U.S. 1, 19 (1968). A protective frisk is constitutionally reasonable when a police officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." Id. at 30.

The requirement that a protective frisk be based upon reasonable suspicion that criminal activity is afoot explains why this type of search is normally preceded by an investigative stop based upon an officer's reasonable suspicion of criminal activity. In this case, by contrast, the pat-down search occurred during the course of routine questioning based upon Gray's consent. Of course, police officers are free to approach a citizen on the street and ask if he is willing to answer a few questions. See Florida

v. Bostick, 501 U.S. 429, 434 (1991). But absent reasonable suspicion justifying a Terry investigative stop, the citizen is free to refuse to answer questions and walk away. See Terry, 392 U.S. at 32-33 (Harlan, J., concurring); id. at 34 (White, J., concurring). And it surely follows that a citizen's consent to answer questions cannot, *without more*, supply the reasonable suspicion that criminal activity is afoot needed to justify a pat-down search. Therefore, there must be "specific and articulable facts," beyond Gray's willingness to stop and answer questions, justifying Officer Ellison's decision that Gray might be armed and presently dangerous *and* that criminal activity might be afoot. Terry, 392 U.S. at 21.

When determining whether a police officer had reasonable suspicion of criminal activity, we must view the totality of the circumstances "as understood by those versed in the field of law enforcement." United States v. Cortez, 449 U.S. 411, 418 (1981). But even viewing the facts of this case from that vantage point, we conclude Officer Ellison did not have reasonable suspicion that criminal activity was afoot when he frisked Gray. Viewed in their totality, the circumstances cited by the government do not support a finding of reasonable suspicion. Gray was walking and then standing on the street in a high-crime area before 10:00 at night in cold weather. Suspected prostitutes were nearby, but Gray had no contact with them. Though Gray hurried across the street, there was no sudden flight at the sight of law enforcement, as in Illinois v. Wardlow, 120 S. Ct. 673 (2000). To the contrary, Gray remained in the area, stopped when the officers approached, identified himself, and answered their questions willingly. "Too many people fit this description for it to justify a reasonable suspicion of criminal activity." United States v. Eustaquio, 198 F.3d 1068, 1071 (8th Cir. 1999). Indeed, at trial, both officers conceded they saw nothing out of the ordinary or criminal.

The government attaches considerable weight to the answers Gray gave to the officers' questions. Officer Ellison testified that when Gray gave his name, Ellison was reminded that a young suspected gang member named Eric Gray had been killed a few months earlier, and Ellison suspected that this Eric Gray, though much older, might be

related to the deceased Eric Gray. Ellison also thought it suspicious that Gray was meeting a friend outside in cold weather, rather than at his nearby residence. Giving due respect to the instincts of experienced law enforcement officers, we cannot see how these answers turned Gray's objectively innocent activity into conduct giving rise to a reasonable suspicion criminal activity was afoot. Gray is a common surname, and Officer Ellison had nothing more than a hunch the two Eric Grays were related. And even if they were, the killing of the other Eric Gray occurred months earlier. Finally, Gray's stated reason for being on the public street, while perhaps unusual in January, was not so improbable as to suggest it was a pretext for criminal activity.

For the foregoing reasons, we conclude the protective frisk of Gray violated his Fourth Amendment rights, and his motion to suppress should therefore have been granted. The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.