**STATE of Missouri, Respondent,**

v.

**James E. HALDIMAN, Appellant.**

**No. WD 61019.**

Missouri Court of Appeals,
Western District.

May 6, 2003.

N. Scott Rosenblum, Douglas P. Roller, Clayton, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, III, Linda Lemke, Jefferson City, MO, for Respondent.

Before THOMAS H. NEWTON, P.J., ROBERT G. ULRICH and EDWIN H. SMITH, JJ.

ROBERT ULRICH, Judge.

James E. Haldiman ("Mr. Haldiman") was convicted of possession of a controlled substance, methamphetamine, section 195.202, RSMo 2000, and sentenced to seven years imprisonment. He does not dispute the sufficiency of the evidence. He makes two claims on appeal, however. Mr. Haldiman asserts that the trial court erred in (1) denying his motion to suppress and admitting at trial the methamphetamine seized from his person during a patdown search conducted when he was stopped for a traffic violation that had concluded before the search, and (2) admitting the laboratory report under the business records exception to the hearsay rule identifying the substance seized from Mr. Haldiman as methamphetamine because the State failed to establish sufficient trustworthiness of the test results. The judgment of the trial court is reversed.

### Factual and Procedural History

While Highway Patrol Trooper Lance MacLaughlin ("Trooper MacLaughlin") was on duty on February 6, 1998, he received a radio communication from troop headquarters that a gray Camaro traveling eastbound on I–70 from Higginsville in Lafayette County was transporting contraband drugs. Nothing in the record indicates that the information came from any source other than an anonymous tip. Trooper MacLaughlin was provided the license plate number of the vehicle. He parked in the median strip of I–70 and watched the eastbound traffic until he observed the vehicle pass him. Trooper MacLaughlin then followed the vehicle for about four miles. While following the vehicle, the trooper observed it veer off the highway onto the shoulder twice. Activating part of the emergency warning devices on the patrol car, he caused the driver of the vehicle to drive to the side of the highway and stop. Trooper MacLaughlin asked the driver, later identified as Mr. Haldiman, to accompany him to the patrol car while he checked the appropriate database regarding his license plate and issued the traffic citation. Mr. Haldiman sat in the patrol car passenger seat as Trooper MacLauglin sat in the driver's seat.

Toward the end of drafting the traffic citation, Trooper MacLaughlin asked Mr. Haldiman if any weapons, illegal narcotics, or stolen property were in the vehicle he had driven. Mr. Haldiman answered in the negative. Trooper MacLaughlin asked

for and obtained Mr. Haldiman's consent to search the vehicle. He then radioed for backup. When the backup arrived, Trooper MacLaughlin asked Mr. Haldiman to stand outside the patrol car, and he complied. Trooper MacLaughlin then performed a pat-down search. Mr. Haldiman was wearing stiff cowboy boots and the trooper lifted the bottom of Mr. Haldiman's jeans to facilitate his viewing inside the boots. He first used a flashlight to look into the right boot and finding nothing he attempted to look into the left boot. Mr. Haldiman cocked his left leg in such a way that the trooper could not see into the boot. Trooper MacLaughlin asked Mr. Haldiman to straighten his left leg, and when he did so, the trooper observed a plastic bag containing a golf-ball amount of a brown powdery substance.

Trooper MacLaughlin seized the plastic bag, which contained another bag of pinkish-brown material. The substances seized were eventually analyzed by laboratory personnel. Both bags contained methamphetamine, with the larger plastic bag containing 14.26 grams, and the smaller bag containing 0.72 grams.

Mr. Haldiman did not take the stand at trial. He was found guilty of the charge, and the court entered its judgment of conviction, sentencing him to seven years as recommended by the jury. This appeal followed.

## Issues on Appeal

Mr. Haldiman raises two issues on appeal. He claims that the trial court erred in denying his motion to suppress and admitting at trial the methamphetamine seized from inside his boot because the seizure of the contraband occurred during a pat-down search following a traffic stop and prior to a consensual search of his vehicle. He argues the search of his person was unlawful in that the traffic stop had concluded and Trooper MacLaughlin did not have specific and articulable facts to reasonably warrant a belief that Mr. Haldiman presented a risk to his safety, and, at the time of the search, the encounter had become consensual and was not the result of an investigative stop. He further contends that the seizure of the alleged methamphetamine was unlawful in that Trooper MacLaughlin exceeded the scope of the pat-down search by pulling up his pants leg and inspecting inside his boot when no object that could be a weapon was felt through the pat-down of his outer clothing. In his second point on appeal, Mr. Haldiman claims that the trial court erred in admitting the laboratory report under the business records exception of the hearsay rule identifying the substances seized from him as methamphetamine because the testimony of the supervisor of the chemist who actually performed the analysis did not and could not establish the trustworthiness of the test results because the underlying data and conclusions were not known to him and were based upon his subjective interpretation of the underlying test data and, finally, that the evidence did not establish the equipment utilized to test the substance was in proper working order when two tests of the content of one of the substances seized yielded different results.

## Standard of Review

■■■ The State bears the burden of showing by a preponderance of the evidence that a motion to suppress should be denied. *State v. Heyer*, 962 S.W.2d 401, 405 (Mo.App. E.D.1998) (citing *State v. Hoopingarner*, 845 S.W.2d 89, 92 (Mo.App. E.D.1993)). Appellate review of a trial court's decision regarding a motion to suppress evidence "is limited to a determination of whether there is substantial evidence to support its decision." *State v. West*, 58 S.W.3d 563, 567 (Mo.App. W.D.

2001) (quoting *State v. Tackett*, 12 S.W.3d 332, 336 (Mo.App. W.D.2000)). The trial court's ruling on a motion to suppress evidence will be reversed only if it is clearly erroneous and the appellate court is left with a definite and firm belief a mistake has been made. *State v. Leavitt*, 993 S.W.2d 557, 560 (Mo.App. W.D.1999). All evidence and any reasonable inferences therefrom will be viewed in the light most favorable to the trial court's ruling. *Tackett*, 12 S.W.3d at 336. When reviewing a trial court's ruling on a motion to suppress, the record made at the suppression hearing as well as the evidence introduced at trial are considered. *State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc 1999), *cert. denied*, 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999). If the ruling is plausible, in light of the record viewed in its entirety, an appellate court will not reverse, even if convinced that it would have weighed the evidence differently. *State v. Milliorn*, 794 S.W.2d 181, 184 (Mo. banc 1990). The factual findings are reviewed only to ascertain if they are supported by substantial evidence, viewing the facts in the light most favorable to the trial court's ruling and disregarding contrary evidence and inferences. *Hoopingarner*, 845 S.W.2d at 92. Although deference is given to the trial court's determination of the credibility of witnesses, whether the Fourth Amendment was violated is a question of law and thus, reviewed *de novo*. *State v. Pfleiderer*, 8 S.W.3d 249, 253 (Mo. App. W.D.1999).

### Point I

Mr. Haldiman argues in his first point on appeal that the trial court erred in overruling his motion to suppress evidence because reasonable, articulable suspicion sufficient to justify the pat-down search did not exist. When a valid stop has been made, officers may pat a suspect's outer clothing if they have a reason-able, particularized suspicion that the suspect is armed. *State v. Rushing*, 935 S.W.2d 30, 32 (Mo. banc 1996). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Id.* (quoting *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)). As outlined in *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.E.2d 889 (1968) (Fortas, J., concurring):

> The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.

Analysis of a search pursuant to *Terry* requires an inquiry into whether an officer could reasonably believe an object discovered during the pat-down was a weapon. *State v. Harrison*, 957 S.W.2d 774, 777 (Mo.App. S.D.1997) (quoting *State v. Vanacker*, 759 S.W.2d 391, 393 (Mo.App. S.D. 1988)). In determining whether Trooper MacLaughlin had a reasonable, articulable suspicion that Mr. Haldiman was armed and presently dangerous, the totality of circumstances known to Trooper Mac-Laughlin at the time of the search are reviewed.

At the time of the search in this case, Trooper MacLaughlin knew he could only ticket Mr. Haldiman for swerving onto the shoulder of the road on the two occasions that he observed him. Additionally, Trooper MacLaughlin testified that he would not have stopped Mr. Haldiman if he had not observed a traffic violation because he would not have been legally justified to do so. He testified that after he stopped the vehicle, Mr. Haldiman was not antagonistic, made no hostile moves,

and that he had no reason to fear for his safety. Trooper MacLaughlin had asked Mr. Haldiman to sit in the Highway Patrol vehicle that Trooper MacLaughlin had driven without searching Mr. Haldiman and he had complied. The trooper had concluded the driving violation matter when he asked Mr. Haldiman for permission to search his vehicle. Mr. Haldiman consented. Trooper MacLaughlin did not ask permission to pat-down Mr. Haldiman. The trooper testified that he searched Mr. Haldiman because this was his routine practice before conducting a vehicle search or turning his back on anyone.

Under these circumstances, Trooper MacLaughlin lacked a reasonable, articulable suspicion that Mr. Haldiman was armed and dangerous at the time of the pat-down search. *See United States v. Glenn*, 152 F.3d 1047, 1049 (8th Cir.1998) (holding that "[an officer's] decision to place [a driver] in his patrol car during [a] routine traffic stop is [in]sufficient to justify the pat-down search solely because this decision placed [the officer] in a potentially vulnerable position").[1] Notwithstanding the absence of any reasonable, articulable suspicion, the State contends law enforcement officers should, as a matter of routine, be allowed to pat-down any driver prior to conducting a vehicle search. This argument is contrary to *Terry's* reasonable suspicion requirement and would allow law enforcement officers to pat-down all traffic offenders simply by receiving permission to conduct a vehicle search that is otherwise unlawful. Trooper MacLaughlin did not receive permission from Mr. Haldiman and he did not have a reasonable, articulable suspicion to pat-down Mr. Haldiman before conducting the vehicle search. Although not bearing on the issue presented here, another trooper was present to help insure Trooper MacLaughlin's security as he searched Mr. Haldiman's vehicle.[2]

The State claims that it was reasonable for Trooper MacLaughlin to conduct a pat-down search of Mr. Haldiman because he had received a radio message that Mr. Haldiman's vehicle might contain drugs. It cites *State v. Pfleiderer*, 8 S.W.3d 249, 255 (Mo.App. W.D.1999), for the proposition that "the nature of the crime [the officer] suspected, drug trafficking, created a wholly credible concern that at least some of the suspects might be armed." (quoting *United States v. Miller*, 974 F.2d 953, 957 (8th Cir.1992)). In this case, no corroboration of the information that Trooper MacLaughlin received regarding the fact that the vehicle may contain drugs was presented. Without corroborating evidence of an anonymous caller or a reasonable, articulable suspicion that Mr. Haldiman presented a danger to his safety, Trooper MacLaughlin was not justified in conducting a pat-down search following the

---

1.  *Cf. United States v. Menard*, 95 F.3d 9, 10–11 (8th Cir.1996) (finding reasonable, articulable suspicion because officer was outnumbered by vehicle's occupants, officer recognized one passenger as drug trafficker found to be carrying a weapon, and stop occurred late at night on a deserted road); *United States v. Abokhai*, 829 F.2d 666, 670 (8th Cir.1987) (finding reasonable, articulable suspicion because of Abokhai's equivocal responses to questions, recent armed robbery in the area, possible presence of unaccounted for third person, and Abokhai's suspicious behavior).

2.  The State cites *State v. Fernandez*, 691 S.W.2d 267, 268 (Mo. banc 1985), *State v. Adell*, 716 S.W.2d 469, 470 (Mo.App. E.D. 1986); and *United States v. Jeffers*, 520 F.2d 1256, 1268 (7th Cir.1975) in its brief in support of the contention that it was reasonable for Trooper MacLaughlin to conduct a pat-down search. These cases are distinguishable from the present case because all three involved officers responding to calls indicating shots had been fired or the suspects were armed.

conclusion of the traffic violation matter simply because Mr. Haldiman then consented to his vehicle being searched.

The State claims that Mr. Haldiman's consent to search a vehicle automatically constituted consent to search his person. Mr. Haldiman argues that he consented to a search of the vehicle only and that consent to conduct a vehicle search does not automatically equate to consent to conduct a pat-down search of the consenting person.

■■■■ "A search conducted without a warrant but with proper consent, voluntarily given, is valid under the Fourth Amendment." *State v. Smith*, 90 S.W.3d 132, 141 (Mo.App. W.D.2002) (citing *State v. Blair*, 638 S.W.2d 739, 750 (Mo. banc 1982)). "This is true even if the search is not otherwise supported by probable cause or a reasonable suspicion of criminal activity." *State v. Lord*, 43 S.W.3d 888, 891–92 (Mo.App. S.D.2001) (citing *Leavitt*, 993 S.W.2d at 563). A law enforcement official may, at any time during a routine traffic stop, ask a citizen if he has contraband on his person or in his car and may ask for permission to search. *Id.* at 891 (citing *State v. Bunts*, 867 S.W.2d 277, 281 (Mo. App. S.D.1993)). Consent to search a vehicle does not automatically equate consent to a pat-down search, however. After concluding the traffic stop matter, Trooper MacLaughlin requested permission to search Mr. Haldiman's vehicle. Mr. Haldiman consented to a search of the vehicle only. He did not consent to a pat-down search of his person. No authority is cited by the State for the proposition that one's consent to search a vehicle impliedly authorizes a search of the consenting person.

Mr. Haldiman also claims that his consent to search the vehicle was insufficient, by itself, to supply the reasonable, articulable suspicion required to justify a pat-down search. He cites *United States v. Gray*, 213 F.3d 998, 1000 (8th Cir.2000), in support of this contention. In *Gray*, two officers approached a citizen on the sidewalk and asked his consent to answer some questions. During the questioning, the officers conducted a pat-down search of the citizen and found a .38–caliber revolver. The citizen was convicted and sentenced to 188 months in prison after his motion to suppress the weapon was denied. On appeal, the citizen argued that the officers' pat-down was not constitutionally reasonable. The appellate court held that the trial court erred in denying the motion to suppress because "a citizen's consent to answer questions cannot, *without more*, supply the reasonable suspicion that criminal activity is afoot needed to justify a pat-down search." *Id.* Something more beyond the citizen's willingness to stop and answer questions was required to justify the officer's decision that he was armed and dangerous. *Id.*

In viewing the totality of the circumstances in this case, Trooper MacLaughlin did not have a reasonable suspicion that Mr. Haldiman was armed and presented a danger to his safety when he frisked him. Although Trooper MacLaughlin received information claiming that Mr. Haldiman's vehicle contained drugs, no corroboration of this fact before conducting the pat-down search was presented. In the absence of Mr. Haldiman's consent to search the vehicle, Trooper MacLaughlin's legal justification to detain Mr. Haldiman and to determine whether he had any weapons posing a danger to him ended after he issued the traffic citation.

Because the pat-down search of Mr. Haldiman was constitutionally unreasonable, point one of Mr. Haldiman's appeal is granted. The portion of Mr. Haldiman's first point on appeal arguing that the scope of the search exceeded the permissible scope of that permitted by *Terry* is not

addressed. Similarly, because the trial court erred in denying Mr. Haldiman's motion to suppress the drugs found in his boot, point two of Mr. Haldiman's appeal, which claims that the trial court erred in admitting the laboratory report identifying the substances seized from Mr. Haldiman as methamphetamine, is not addressed.

For the foregoing reasons, the pat-down search of Mr. Haldiman violated his Fourth Amendment rights. The evidence should not have been admitted. The judgment of the trial court is reversed.

All concur.