

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,    )    *Opinion issued January 14, 2020*
           )
  Respondent,     )
           )
v.           )    No. SC97811
           )
ANTHONY JAMES SMITH,   )
           )
  Appellant.      )

## APPEAL FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
### The Honorable Wesley C. Dalton, Judge

Anthony Smith appeals his conviction of felony possession of a controlled substance in violation of section 579.015.[1]  The circuit court admitted, over Smith's objection, evidence obtained from his statements and a search of his vehicle after a traffic stop.  Smith argues the evidence should have been suppressed.  Because the traffic stop was justified after Smith's vehicle crossed the fog line and drove on the shoulder in violation of section 304.015, this Court affirms.

---

[1]  All statutory citations are to RSMo 2016, unless otherwise noted.

## Factual and Procedural History

On January 8, 2017, Smith was stopped by Sgt. S.B. Johnson of the Missouri State Highway Patrol on the side of Interstate 70 in Montgomery County. According to Sgt. Johnson's testimony, Smith's vehicle drew his attention because he noticed that, on several occasions, the vehicle's turn signal turned on but then was turned off before the lane change was fully completed. Shortly thereafter, Sgt. Johnson observed the passenger-side tires of the vehicle appear to completely cross the "fog line"[2] on the right side of the roadway. He could see pavement between the fog line and the tire, and he observed the tire was "no longer within the lane of traffic." Sgt. Johnson initiated a traffic stop, and Smith pulled over to the side of the road.

During the stop, Sgt. Johnson smelled marijuana. When asked by Sgt. Johnson, Smith admitted he had smoked marijuana in the vehicle the prior week and there was marijuana in the vehicle. Sgt. Johnson searched the vehicle and found marijuana cigarettes in a backpack in the passenger compartment and approximately four pounds of marijuana in the trunk.

Smith was charged with felony possession of a controlled substance. Smith filed a motion to suppress physical evidence and incriminating statements, arguing "[m]erely crossing the fog line is insufficient probable cause to initiate a traffic stop in Missouri" and "[l]legally signaling an intention to change lanes creates no reasonable suspicion or probable cause" for detention. The circuit court overruled the motion to suppress, and

---

[2] As described more specifically below, the fog line is the marked delineation separating the shoulder from the traveled portion of the highway.

Smith was found guilty of felony possession of a controlled substance. His seven-year sentence was suspended, and he was placed on probation for five years. Smith appealed, claiming the circuit court erred in overruling his motion to suppress because the traffic stop was unreasonable and a violation of the Fourth Amendment of the United States Constitution and article I, section 15 of the Missouri Constitution. After an opinion by the court of appeals, this Court granted transfer.[3]

## Standard of Review

The issue of whether police conduct, such as a traffic stop, violates the Fourth Amendment is a question of law that is reviewed *de novo*. *State v. Lammers*, 479 S.W.3d 624, 630 (Mo. banc 2016). The question of whether crossing the "fog line" is a traffic violation is an issue of statutory interpretation, which is a question of law that is also reviewed *de novo*. *Finnegan v. Old Republic Title Co. of St. Louis, Inc.*, 246 S.W.3d 928, 930 (Mo. banc 2008). Where, as here, the circuit court does not issue findings of fact when ruling on a motion to suppress, this Court "considers all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *Lammers*, 479 S.W.3d at 630.[4]

---

[3] This Court granted transfer pursuant to Rule 83.02, and jurisdiction is authorized under article V, section 10 of the Missouri Constitution.

[4] To the extent the dissenting opinion disputes the fact that Smith crossed the fog line based on its review of the evidence, such analysis goes beyond the proper scope of appellate review. Moreover, Smith does not contest that he crossed the fog line and merely challenges the legal effect of this act.

**Analysis**

The Fourth Amendment of the United States Constitution guarantees the right of the people to be free from unreasonable searches and seizures. *State v. Jones*, 865 S.W.2d 658, 660 (Mo. banc 1993).[5] A temporary, noncustodial traffic stop constitutes an "unreasonable" "seizure" under the Fourth Amendment unless the stop is supported by reasonable suspicion or probable cause. *United States v. Brignoni-Ponce, 422 U.S. 873, 879 (1975); Davis v. Mississippi*, 394 U.S. 721, 726-27 (1969). "A routine traffic stop based on the violation of state traffic laws is a justifiable seizure under the Fourth Amendment." *State v. Barks*, 128 S.W.3d 513, 516 (Mo. banc 2004); *see also Whren v. United States*, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *accord New York v. Class*, 475 U.S. 106, 117-18 (1986) (stopping a car was justified for speeding and a cracked windshield); *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (stopping a car was justified for expired license plate tags). "[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator." *United States v. Bell*, 86 F.3d 820, 822 (8th Cir. 1996).

Smith's sole argument on appeal is that the traffic stop was unreasonable in that it was not based on constitutionally sufficient reasonable suspicion, and, therefore, the subsequent discovery and seizure of marijuana and statements Smith made are "fruit of the

---

[5] Article I, section 15 of the Missouri Constitution also protects against unreasonable searches and seizures and is coextensive with the Fourth Amendment. *Jones*, 865 S.W.2d at 660.

4

poisonous tree" and should be suppressed. *See Nardone v. United States*, 308 U.S. 338, 341 (1939) (holding the exclusionary rule applies to evidence discovered and found to be derivative of an illegal search and seizure, or "fruit of the poisonous tree"). However, if Sgt. Johnson had probable cause to believe Smith committed a traffic violation, the traffic stop would be a justifiable seizure under the Fourth Amendment, and the recovery of contraband and statements Smith made after the stop would not be subject to exclusion under the "fruit of the poisonous tree" doctrine. Therefore, our analysis turns on whether crossing the fog line and driving on the shoulder is a violation of Missouri law.

*Interpretation of Section 304.015*

Smith's sole point on appeal contends "[m]erely touching or crossing the fog line does not give reasonable suspicion that any crime or traffic offense has occurred." The State contends, however, crossing the fog line and driving on the shoulder is a violation of the motor vehicle operating restrictions set forth in section 304.015. Therefore, the Court must interpret section 304.015 and discern whether crossing the fog line and driving on the shoulder contravenes this provision and constitutes a traffic violation.

The goal of statutory interpretation is to give effect to the General Assembly's intent "as reflected in the plain language of the statute at issue." *State v. Jones*, 479 S.W.3d 100, 106 (Mo. banc 2016) (quoting *Ivie v. Smith*, 439 S.W.3d 189, 202 (Mo. banc 2014)). "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used [and] to give effect to that intent if possible[.]" *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. banc 1988).

Section 304.015.2 provides; "[U]pon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway[.]" Section 304.001(12) defines "roadway" as "that portion of a state highway ordinarily used for vehicular travel, exclusive of the berm or shoulder." The "fog line" is "the white [or yellow] line that demarcates the shoulder from the road." *Riche v. Dir. of Revenue*, 987 S.W.2d 331, 333 (Mo. banc 1999). There is no statutory definition of "drive" for purposes of section 304.015.2. When a term is not defined by statute, this Court will give the term its "plain and ordinary meaning as derived from the dictionary." *Mo. Pub. Serv. Comm'n v. Union Elec. Co.*, 552 S.W.3d 532, 541 (Mo. banc 2018). The verb "drive" means, in relevant part, "to operate the mechanism and controls and direct the course of" a motor vehicle. Webster's New Int'l Dictionary 692 (3d ed. 2002). Unless otherwise excepted by the statute,[6] therefore, operating and directing the course of a vehicle on the shoulder by allowing a moving vehicle to leave the roadway, including briefly crossing the fog line, is a violation of section 304.015.2. Section 304.015.9 states a "[v]iolation of [304.015] shall

---

[6] Exceptions listed in section 304.015 include instances of road closures, one-way streets, and making a turn. Section 304.015.1 also provides vehicles not in motion should be as near to the right-hand side of the highway as practicable, allowing for a driver who intends to stop his or her vehicle to transition from the roadway to the shoulder. Further, section 563.026.1 provides that conduct that would otherwise be a violation of the law is "**justifiable and not criminal** when it is necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor . . . ." (Emphasis added). For this reason, many of the hypotheticals envisioned by the dissenting opinion involving inclement weather or an obstruction in the roadway may not be considered a traffic violation due to the defense of justification under section 563.026.

be deemed a class C misdemeanor[.]" Crossing the fog line and driving on the shoulder, therefore, is a traffic violation and creates a lawful justification for a traffic stop.[7]

*Application of Section 304.015*

At the suppression hearing, Sgt. Johnson testified he observed Smith "completely cross[] the fog line," and thereby operate and direct the course his vehicle on the shoulder. Considering this evidence in the light most favorable to the trial court's ruling, Sgt. Johnson had probable cause to stop Smith's vehicle for a violation of section 304.015, and the stop did not constitute an unreasonable seizure under the Fourth Amendment.[8] Accordingly, the circuit court did not clearly err in overruling Smith's motion to suppress.

---

[7] Although this Court is not bound by the court of appeals, this case is not the first time a Missouri appellate court has reached this result. For example, *State v. Collins*, 72 S.W.3d 188 (Mo. App. S.D. 2002), held traveling on the highway shoulder "was a violation of state law for failing to drive in the right-hand lane." *Id.* at 195 (citing § 304.015.2, RSMo 2000). In *State v. Haldiman*, the court of appeals recited that an officer stopped a car after he "observed it veer off the highway onto the shoulder" and issued a traffic citation for that violation. 106 S.W.3d 529, 531 (Mo. App. W.D. 2003). In *State v. Belton*, the court of appeals did not question the validity of a stop based on observed fog line violations. 108 S.W.3d 171 (Mo. App. W.D. 2003). Other jurisdictions have considered whether crossing the fog line is a traffic violation and warrants a traffic stop. *See, e.g.*, *United States v. Wills*, No. 05-0014-01-CR-W-NKL, 2006 WL 2483210, at *4 (W.D. Mo. Aug. 25, 2006) (stating that crossing the fog line is "a violation of Missouri traffic laws"); *State v. Hett*, 834 N.W.2d 317, 324 (S.D. 2013) (finding an officer's observance of a single instance of a vehicle crossing over the fog line is a violation of South Dakota traffic law similar to section 304.015); *United States v. Pulliam*, 265 F.3d 736, 739-40 (8th Cir. 2001) (applying Arkansas law when an officer believed the driver had violated the law by crossing the fog line). *State v. Tijerina*, 811 P.2d 241, 243 (Wash. Ct. App. 1991) (finding a stop justified because the driver crossed the fog line). The dissenting opinion, however, notes other appellate decisions from Missouri and other jurisdictions that have reached the opposite conclusion. These contradictory decisions demonstrate the importance of resolving this issue in Missouri law, but have no controlling effect on this Court's decision.

[8] The dissenting opinion suggests any violation of section 304.015 should be based on the length and severity of the driver's deviation from the roadway to the shoulder, but section

## Conclusion

The circuit court's judgment is affirmed.

_____
W. Brent Powell, Judge

Wilson, Russell, Breckenridge and Fischer, JJ., concur;
Stith, J., dissents in separate opinion filed;
Draper, C.J., concurs in opinion of Stith, J.

---

304.015 makes no exceptions for "momentary" or minor deviations, however they may be defined. Moreover, the issue is not whether Smith's conduct was sufficient to warrant a conviction for violating section 304.015. The issue, rather, is whether there was probable cause to believe Smith committed a traffic violation when he crossed the fog line. There is also no exception in Fourth Amendment jurisprudence for traffic violations that are commonplace among otherwise law-abiding citizens. As the Supreme Court has observed: "Petitioners urge . . . that the 'multitude of applicable traffic and equipment regulations' is so large and so difficult to obey perfectly that virtually everyone is guilty of violation, permitting the police to single out almost whomever they wish for a stop. **But we are aware of no principle that would allow us to decide at what point a code of law becomes so expansive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement.** And even if we could identify such exorbitant codes, we do not know by what standard (or what right) we would decide, as petitioners would have us do, which particular provisions are sufficiently important to merit enforcement." *Whren*, 517 U.S. at 818-19 (1996) (emphasis added).

8



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,            )
                              )
    Respondent,            )
                              )
v.                            )    No.  SC97811
                              )
ANTHONY JAMES SMITH,          )
                              )
    Appellant.             )

## DISSENTING OPINION

I respectfully dissent.  The principal opinion concludes Sgt. S.B. Johnson could stop Anthony Smith's vehicle after allegedly witnessing the vehicle's rear passenger-side tire momentarily cross the fog line because this gave Sgt. Johnson probable cause to believe Mr. Smith was violating section 304.015.2.[1]  That statute does not state that passage of one or more tires of a vehicle over the fog line is a traffic violation, however.  It simply requires a car to be "driven upon the right half of the roadway."  *§ 304.015.2*.  No authority is cited that one momentary crossing of the fog line by a vehicle's tires (if such a crossing even occurred here) constitutes failing to "drive" on the right half of the roadway.  To the contrary, prior cases from this Court assume, and prior cases of the court of appeals and

---

[1] All statutory citations are to RSMo 2016 unless otherwise noted.

other jurisdictions hold, that such minor deviations of a tire onto the shoulder do not constitute a traffic offense. This Court should also so hold.

Before further discussing this legal issue, it is important to clarify what the facts of this case actually are. There is no claim here that Mr. Smith was driving dangerously or recklessly, that he was proceeding down the shoulder rather than in his lane, or that he was weaving in and out of his lane. There could not be, for the dash camera video shows, and Sgt. Johnson testified, there was nothing erratic about Mr. Smith's driving. Rather, by the sergeant's own testimony at the suppression hearing, Mr. Smith made several controlled and orderly lane changes. Sgt. Johnson said he observed only one momentary crossing over the fog line by the rear passenger tire at the end of an otherwise measured and proper lane change:

> Q. And you saw him change lanes several times. You didn't notice -- Until the fog line incident you didn't notice his, the defendant, being unable to maintain a single lane; did you?
> A. No, sir.
> Q. You didn't notice any weaving within the lane?
> A. No, sir.
> Q. His lane changes were controlled and orderly?
> A. Yes.
> Q. Maintained the speed limit?
> A. Yes, sir.
> Q. No sudden accelerations or decelerations?
> A. No, sir.
> Q. And he was able to pull the car to a smooth, controlled stop when you turned on your lights?
> A. Yes, sir.
> Q. And the fog line, his crossing the fog line, as I recall he did that as he was changing lanes, he went a little too far and crossed the fog line?
> A. That's correct.
> Q. And then was he able to correct the vehicle and maintain a single lane after he crossed the fog line?
> A. It -- I stopped him pretty soon after that, but yes.

2

....

Q. And this fog line, that happened one time where he crossed the fog line?

A. That I observed, yes.

In fact, the dash camera video shows Sgt. Johnson did not pull Mr. Smith over "pretty soon" after his vehicle allegedly crossed the fog line but rather waited for a full minute and one-half *after* the alleged momentary crossing, indicating he did not believe the negligible alleged crossing of the line presented a traffic hazard. *See State v. Roark, 229 S.W.3d 216, 222 (Mo. App. 2007)* (noting the trooper "did not initiate a stop upon observing Roark's transgressions over the fog line, suggesting that the conduct observed was not sufficiently erratic or dangerous to trigger an immediate stop").

Even under the sergeant's version of events, Mr. Smith at most slightly overcorrected when moving back into the right-hand lane after a lane change. There is no evidence he actually was driving on the shoulder. And, in fact, the dash camera footage does not even support the sergeant's claim that he saw Mr. Smith's tire cross the fog line at all. It instead shows Mr. Smith's vehicle was multiple vehicle lengths in front of the sergeant's vehicle and in the lane to the right of the sergeant's vehicle so that it was physically impossible for him to have seen Mr. Smith's front passenger tire.[2] The sergeant could view the back and left side of Mr. Smith's vehicle and could see it moved over to the right edge of the right-hand lane as it changed lanes to the right, but it is impossible to determine that it went over rather than on the fog line. The view was simply too distant

---

[2] Sgt. Johnson's testimony makes clear he could see only the rear passenger tire. At the suppression hearing, the prosecutor asked Sgt. Johnson whether Smith's vehicle touched or went over the fog line. Sgt. Johnson responded by saying, "Uh, the rear tire that I could see completely crossed the fog line."

3

and the right rear (and front) tire too obscured and at the wrong angle to permit the sergeant to have seen whether there was any pavement between the tire and the fog line even had the tire gone over the fog line. The video simply does not support that the vehicle's tires ever left the roadway.

But laying aside the lack of video support for the claim that Mr. Smith's vehicle crossed the fog line at all, neither does the law support the principal opinion's conclusion that a tire momentarily crossing the fog line constitutes a failure to comply with section 304.015.2's requirement that "[u]pon all public roads or highways of sufficient width a vehicle shall *be driven* upon the right half of the roadway." *§ 304.015.2* (emphasis added).

The principal opinion focuses on the word "roadway" and correctly notes that section 304.001(12) defines "roadway" as "that portion of a state highway ordinarily used for vehicular travel, exclusive of the berm or shoulder." *§ 304.001(12)*. Therefore, the statute requires a car to be driven on the roadway, not the shoulder. But that merely begs the question at issue here – whether Mr. Smith was "driving" on the shoulder merely because one or two of his tires allegedly inadvertently crossed over the fog line for an instant.

The principal opinion says he was, but it cites no statutory authority for such a holding. The statute in question does not define "driving." Driving is defined for purposes of applying laws regarding driving while intoxicated as "physically driving or operating a vehicle or vessel," *§ 577.001(9),* but this self-referential definition is of no help in determining whether a tire's momentary movement over the fog line constitutes a failure to drive on the right side of the roadway. The principal opinion looks to the dictionary

4

definition of "drive" and defines it as "to operate the mechanism and controls and direct the course of" a motor vehicle. *Slip op. at 6*. The principal opinion then jumps to the conclusion that under this definition briefly crossing the fog line with one or both passenger-side tires is driving on the shoulder. This definition, too, however, merely begs the question as to what constitutes operating or directing the course of a motor vehicle off the roadway. It is uncontested Mr. Smith was directing his vehicle down the roadway, as near as practicable to the right-hand side of the road. Nothing in the definition of driving as to "direct the course of a motor vehicle" gives notice that if a particular part of the vehicle goes over the fog line, no matter how insignificantly, then even though the remainder is in the right-hand lane, the driver would be guilty of directing the course of his or her vehicle off the roadway. The statute could so define failure to drive upon the roadway, of course, but it does not. Indeed, taking the principal opinion's definition to the extreme, allowing the right-hand mirror or any part of the vehicle above the tires to cross over the fog line would be a violation also. Yet no case so holds, for it simply does not constitute failing to drive upon the roadway in any reasonable estimation of that concept, no matter what the abstract definition of "driving" may be.

The same inconsistency with common understanding results from the principal opinion's conclusion that the momentary crossing of the fog line by a vehicle's passenger-side tires constitutes driving on the shoulder. This conclusion will surprise the many Missourians who for the first time have learned they may have unknowingly committed a violation they had no prior notice existed. Indeed, contrary to the principal opinion's suggestion that prior cases have reached a similar result, the cases it cites all involve very

5

different facts.[3] This is the first case from Missouri, and certainly from this Court, to hold that a single, momentary overcorrection constitutes "driving" on the shoulder in violation of section 304.015.2.

Prior Missouri cases instead have looked to the longstanding rule of construction that traffic laws "are not unyielding and inflexible and are not to be applied rigidly, absolutely and peremptorily without regard to circumstances or conditions there existing." *Leonard v. Gordon's Transp., Inc., 575 S.W.2d 244, 249 (Mo. App. 1978)*. Rather, it is well-settled – for all but the principal opinion – that a court "interprets statutes in a way that is not hyper-technical but, instead, is reasonable and logical and gives meaning to the statute." *Fred Weber, Inc. v. Dir. of Revenue, 452 S.W.3d 628, 630 (Mo. banc 2015)*.

The principal opinion today holds that "section 304.015 makes no exceptions" for momentary or minor deviations onto the shoulder. *Slip op. at 8 n.8*. To be sure, the principal opinion is correct that section 304.015.2 does not explicitly exempt minor

---

[3] The principal opinion cites *State v. Collins*, 72 S.W.3d 188 (Mo. App. S.D. 2002); *State v. Haldiman, 106 S.W.3d 529, 531 (Mo. App. W.D. 2003);* and *State v. Belton, 108 S.W.3d 171 (Mo. App. W.D. 2003),* for the proposition that it is not in fact the first to reach this result. But in *Collins*, the truck went onto the shoulder twice *and* crossed the center line (the "truck went off onto the shoulder and then corrected, causing the left tires to cross over the center line. The truck then corrected the other way, going onto the shoulder of the road"). Those are not the facts of this case. Likewise, in *Haldiman*, the trooper saw the motorist "veer off" onto the highway shoulder "*twice*." *106 S.W.3d 529, 531 (Mo. App. W.D. 2003)* (emphasis added). Those are also not the facts of this case – Mr. Smith neither "veered" nor did he cross the fog line multiple times. And while the principal opinion states the court of appeals in *Belton* did not question the validity of a traffic stop, that is because the facts in *Belton* showed the officer "saw it [the vehicle] repeatedly cross the fog and center lines." *108 S.W.3d 171, 172 (Mo. App. W.D. 2003)*. Moreover, before stopping, the vehicle "littered" by throwing two bags of marijuana out the window. Here, by contrast, the question is whether the momentary crossing of the fog line by one or two tires constitutes driving on the shoulder, an entirely different question.

6

deviations. It likewise includes no exception for inclement weather or obstructions in the roadway.[4] The principal opinion's hyper-technical approach, therefore, potentially criminalizes a motorist who, driving in a storm, or out of caution for an obstruction in the roadway, briefly and negligibly crosses the fog line and touches the shoulder with their passenger-side tires.[5] This was not the intent of the General Assembly. More than that, such a result is neither "reasonable" nor "logical." *Fred Weber, Inc., 452 S.W.3d at 630.* This Court has long-abided that the construction of a statutory scheme should avoid absurd

---

[4] Section 304.015.2 exempts failing to drive upon the right half of the roadway in *only* the following situations:

> (1) When overtaking and passing another vehicle proceeding in the same direction pursuant to the rules governing such movement;
> (2) When placing a vehicle in position for and when such vehicle is lawfully making a left turn in compliance with the provisions of sections 304.014 to 304.025 or traffic regulations thereunder or of municipalities;
> (3) When the right half of a roadway is closed to traffic while under construction or repair;
> (4) Upon a roadway designated by local ordinance as a one-way street and marked or signed for one-way traffic.

*§ 304.015.2.* The principal opinion also recognizes that section 304.015.1 allows a driver intending to stop his or her vehicle to transition from the roadway to the shoulder.

[5] The principal opinion suggests its analysis does not amount to an illogical application of the statute because, while the State might be able to charge the driver with a crime for crossing the fog line even in the extreme examples offered by this dissenting opinion, the defendant would be free to assert in justification that crossing the fog line was "necessary as an emergency measure to avoid an imminent public or private injury which is about to occur by reason of a situation occasioned or developed through no fault of the actor …." *Slip op. at 6 n.6, quoting, § 563.026.1.* Of course, the burden is on the defendant to prove such an affirmative defense. To require a person in these situations to be subject to trial and the risk of conviction because a tire crossed the fog line remains neither reasonable nor logical.

7

results.  *State ex rel. Hillman v. Beger, 566 S.W.3d 600, 608 (Mo. banc 2019)*.  There is no reason to depart from that standard now.

This Court found in *Skiles v. Schlake, 421 S.W.2d 244, 247 (Mo. 1967)*, that the mere travel onto the right shoulder of a roadway could not support a claim of negligence without some further proof of inattentive or negligent behavior.  In so concluding, it said merely being on the shoulder did *not* constitute a violation of the rules of the road despite this Court's recognition that section 304.015.2 requires one to drive on the right side of the roadway, stating:

> Appellant argues that the charge of failure to drive on the traveled portion of the roadway is a charge of specific negligence, involving failure to observe the statutory rules of the road, specifically paragraph 2 of s 304.015, RSMo 1959, V.A.M.S., which provides: 'Upon all public roads or highways of sufficient width a vehicle shall be driven upon the right half of the roadway ....' Appellant argues that this provision makes driving off the roadway on the right side of the highway a violation of the rules of the road just as it makes driving to the left of the center of the roadway. The obvious purpose of this statute is to change the common law of the road that one has a right to travel on either side of the highway when no one is coming in the opposite direction. *7 Am.Jur.2d, Automobiles and Highway Traffic, s 219, p. 768*. The statute was not intended to create a duty toward a person in the position of the plaintiff here and affords no basis for a charge of negligence in this situation.

*Id. at 246-47.*

*State v. Scholl, 114 S.W.3d 304, 309 (Mo. App. 2003),* in reliance on *Skiles*, reversed the defendant's conviction for failing to drive on the right side of the road in violation of section 304.015.2 when the evidence showed defendant was found in the driver's seat of a vehicle that had crashed into a tree off the right shoulder of the roadway.  In so doing, the *Scholl* court stated:

8

The State argues that by driving off the roadway into an embankment, Scholl must be guilty of failing to drive on the right half of the road. The Supreme Court rejected a similar argument when determining whether, under this statute, a defendant in a negligence suit had a duty to avoid driving off the road and into the plaintiff …

*Id.* Quoting the language from *Skiles* quoted above, *Scholl* concludes:

Nothing in *this* statute makes Scholl's conduct a crime. Of the handful of opinions involving convictions under section 304.015.2 in which the underlying facts were published, every defendant had driven on the wrong half of the road. *See generally State v. Galazin*, 58 S.W.3d 500 (Mo. banc 2001) (crossed center line); *State v. McHaffie*, 762 S.W.2d 875 (Mo. App. S.D.1989) (crossed center line); *State v. Barker*, 490 S.W.2d 263 (Mo. App. 1973) (crossed center line); *see also generally State v. Voyles*, 823 S.W.2d 143 (Mo. App. E.D.1992) (drove on center line of two westbound lanes); and *see State v. Chamberlin*, 872 S.W.2d 615, 617 (Mo. App. W.D.1994) (noting that, while not charged thereunder, driving on center line with car in both right and left half of road is prohibited under section 304.015.2).

Driving off the highway from the right hand side of the road as Scholl did here might support a criminal charge under *other* statutes. For instance, section 304.012.1 mandates that motorists drive in a "careful and prudent manner" and "exercise the highest degree of care." Violation of that section is a misdemeanor. Section 304.012.2. But that crime was not charged, and the State must prove the charges it filed. *State v. Keeler*, 856 S.W.2d 928, 931 (Mo. App. S.D.1993).

There is not sufficient evidence from which a reasonable trier of fact could have found Scholl guilty beyond a reasonable doubt of failing to drive on the right half of the roadway.

*Id.* (emphasis in original).

Other Missouri appellate decisions have reached a similar result in determining whether a momentary crossing of the fog line violates similar statutes – requiring a vehicle to be driven in a single lane, for instance. A good example is *State v. Abeln, 136 S.W.3d 803 (Mo. App. 2004)*. The appellate court found there was no probable cause to support a traffic stop based on the trooper's statement he "observed on 2 occasions that the passenger side tires of the truck traveled over what is commonly referred to as the fog line" because

9

"slightly crossing over the fog line once or twice for a moment does not, in and of itself, justify a traffic stop." *Id. at 807, 810 n.7*;[6] *accord Jefferson Cty. v. Dennis, 441 S.W.3d 152, 153 (Mo. App. 2014)* (per curiam order affirming refusal to find probable cause for violation of ordinance comparable to section 304.015.1 when the evidence showed only that "Defendant's tires crossed the fog line"). Indeed, as discussed below, in other Missouri cases the State and the court do not even suggest that crossing the fog line would justify a traffic stop in itself even though "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred," *Whren v. United States, 517 U.S. 806, 810 (1996)*; they instead merely consider that fact along with other facts (such as weaving) to determine whether together they provided reasonable suspicion of criminal activity. *See, e.g., Roark, 229 S.W.3d at 220* (no reasonable suspicion for stop when "passenger-side tires cross the fog line twice, onto the paved shoulder of the highway").

*Abeln* correctly noted there is also "extensive case law from numerous jurisdictions holding that slightly crossing over the fog line once or twice for a moment does not, in and

---

[6] Cases cited by the dissenting opinion in *Abeln* are easily distinguished on the facts. *See, e.g., State v. Anderson, 6 P.3d 408, 410 (Idaho Ct. App. 2000)* (finding reasonable suspicion of a traffic violation when motorist traveling on shoulder for extended period of time); *State v. Arnold, 779 So. 2d 840, 844 (La. Ct. App. 2000)* (finding reasonable suspicion of a lane usage violation when driver crossed fog line onto the shoulder several times); *State v. Burris, 545 N.W.2d 192, 193-94 (N.D. 1996)* (finding reasonable suspicion when the driver was over the fog line by two to three feet and continued on the shoulder for several hundred yards); *United States v. Pulliam, 265 F.3d 736, 739-40 (8th Cir. 2001)* (finding a traffic violation under Arkansas law when the motorist crossed over the fog line twice); *State v. Tijerina, 811 P.2d 241, 243 (Wash. Ct. App. 1991)* (finding the initial stop was justified because the driver crossed the fog line by two feet).

of itself, justify a traffic stop." *136 S.W.3d at 810 n.7.* In *Rowe v. State, 769 A.2d 879, 885-86 (Md. App. 2001),* for example, the Maryland appellate court found no probable cause for a stop for failing to drive in a single lane merely because a trooper observed the motorist's vehicle "cross[] … about eight inches over that white edge line on to the shoulder." The Maryland court noted the purpose of the statute is not to protect the integrity of the lane marking but "to promote safety on laned roadways." *Id. at 885.* Citing numerous similar decisions from other states, the court concluded, because the "momentary crossing of the edge line of the roadway and later touching of that line" did not present any danger, it did not support the traffic stop. *Id. at 889.*

Likewise, in *State v. Lafferty,* the Montana Supreme Court held a motorist who "crossed onto and barely over the fog line on the far right side of the right traffic lane in which she was traveling" was not driving illegally under a Montana statute requiring that a "vehicle shall be driven as nearly as practicable entirely within a single lane." *967 P.2d 363, 366 (Mont. 1998), abrogated on other grounds by State v. Flynn, 251 P.3d 143, 145-46 (Mont. 2011)* (also holding "cross[ing] the fog line, with both right-side tires traveling on the shoulder" *three times* was not a violation of the Montana statute requiring motorists maintain a single lane).[7] These cases themselves cite cases from still other jurisdictions

---

[7] *Accord State v. Livingston*, 75 P.3d 1103, 1105-06 (Ariz. Ct. App. 2003) (finding, when a motorist's "right side tires [] crossed the white shoulder line on one occasion" but the motorist was "driving within the speed limit" and was "not weav[ing] or engag[ing] in any erratic driving," the motorist had not violated an Arizona statute which required the motorist to maintain a single lane as nearly as practicable); *United States v. Gregory, 79 F.3d 973, 978 (10th Cir. 1996)* (holding, on a winding road, "an isolated incident" of a vehicle crossing into the emergency lane of the roadway was not a violation of a Utah statute requiring vehicles to be operated "as nearly as practicable entirely within a single

holding that conduct must be more egregious than a momentary travel over the fog line to warrant a traffic stop or give rise to probable cause of a traffic violation.[8]

That is not to say it is not a traffic violation to actually drive down the shoulder as if it were a lane of the highway. Such conduct clearly constitutes driving outside the right half of the roadway. *See, e.g., State v. Atkinson, 543 S.W.3d 656, 658 (Mo. App. 2018)* (probable cause when officer saw driver move "over to the right onto the shoulder past the fog line and *then started driving on the shoulder as if it were an actual driving lane of traffic*" (emphasis added)).

In short, while the definition of "roadway" indeed supports that "driving on the shoulder" may be prosecuted as a traffic offense, nothing in the statute or prior cases supports the hyper-technical interpretation adopted by the principal opinion. The statute at issue does not say a momentary, inadvertent crossing over the fog line by one or both tires is a violation of section 304.015.2. It says failure to *drive on the roadway* is a violation. A momentary, de minimus touching of or just over the fog line does not

---

lane"); *State v. Fuller, 416 P.3d 957, 962 (Idaho 2018)* (holding an "isolated incident of touching the fog line does not violate section 49-637(1)," which requires a vehicle to be driven in a single lane, and, because "the fog line does not signify a formal lane barrier, an isolated incident of temporarily *crossing* the fog line likewise does not violate section 49-637(1)" (emphasis added)).

[8] *See, e.g., Crooks v. State, 710 So.2d 1041, 1043 (Fla. App. 1998)* ("[A] violation does not occur in isolation, but requires evidence that the driver's conduct created a reasonable safety concern"); *State v. Cerny, 28 S.W.3d 796, 800-01 (Tex. App. 2000)* (no traffic violation although the officer testified car swerved over fog line three to four times; even if motorist was "weaving somewhat" within his own lane, there was "no evidence that his actions were unsafe").

constitute failing to drive on the right side of the road and does not provide probable cause of a traffic violation sufficient to support a traffic stop.

Even if this Court had the authority to adopt a broader definition of "driving" that would include a momentary crossing of the fog line, prior cases gave no notice to Missouri motorists like Mr. Smith that the law in this regard would change. This is important, for violating traffic laws can result in a serious fine or imprisonment – in this case, up to 15 days in jail or a $750 fine, or both. *§ 558.011(8); § 558.002(4)*. To so broadly interpret the language of the traffic statutes despite their failure to define driving violates the principle that "[a] criminal statute must clearly define the conduct it proscribes," *Skilling v. United States, 561 U.S. 358, 415 (2010)*, and must not "fail[] to provide a person of ordinary intelligence fair notice of what is prohibited, or [be] so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams, 553 U.S. 285, 304 (2008)*.

Persons of ordinary intelligence could not have known from the words of section 304.015 or prior decisions of Missouri courts that one momentary, inadvertent crossing of one or both passenger-side tires over the fog line with an immediate correction is "driving" on the shoulder and failing to drive upon the right half of the roadway. Neither logic nor the fundamental fairness that underlies the criminal law supports the reading of section 304.015.2 the principal opinion adopts today. Smith was not "driving" on the shoulder, and his momentary crossing over the fog line did not violate section 304.015.2.

Finally, I would note that, absent a holding by this Court that Mr. Smith's alleged momentary crossing of the fog line constituted probable cause to stop him, the stop was

13

not supported by reasonable suspicion. "Whether reasonable suspicion exists is a question of law this Court reviews *de novo*." *State v. Lovelady, 432 S.W.3d 187, 190 (Mo. banc 2014)*. Sgt. Johnson's own testimony dispels any notion that Smith was driving his vehicle in an erratic or unusual manner. Mr. Smith engaged in no suspicious activity – he was driving in his lane, using his blinker, with his car in control, other than the momentary crossing of the fog line, which has been repeatedly held not to itself provide reasonable suspicion for a stop. *See, e.g., State v. Beck, 436 S.W.3d 566, 568 (Mo. App. 2013)* (affirming grant of motion to suppress when officer observed "mere touching or crossing the fog line"); *Abeln, 136 S.W.3d at 810 n.7.* The articulable facts Sgt. Johnson offered for the traffic stop are not constitutionally sufficient to give rise to reasonable suspicion.[9] Sgt. Johnson's stop of Smith's vehicle, therefore, was not permitted under the Fourth Amendment of the United States Constitution or article I, section 15 of the Missouri Constitution.

Because Smith's brief overcorrection onto or over the fog line was not a traffic violation and Sgt. Johnson's testimony and the dash camera video demonstrate a lack of reasonable suspicion, the circuit court erred in not suppressing the evidence of the

---

[9] Sgt. Johnson asserts that, on several occasions, Smith terminated his turn signal before completing a lane change. But Sgt. Johnson also admitted that terminating a turn signal before fully completing a lane change is not a violation of state law. Moreover, Sgt. Johnson conceded that a turn signal was, in fact, used each time Smith changed lanes and acknowledged various reasons the signals might terminate early. Neither this fact, nor the brief crossing of the fog line, taken together with the other facts as they must be under a "totality of the circumstances," provided Sgt. Johnson with reasonable suspicion "criminal activity may be afoot." *State v. Mack, 66 S.W.3d 706, 709 (Mo. banc 2002), quoting, Terry v. Ohio, 392 U.S. 1, 30 (1968)*.

14

discovery and seizure of marijuana and statements made by Smith as the fruit of his unreasonable seizure.  *State v. Grayson, 336 S.W.3d 138, 147 (Mo. banc 2011)*; *see also Nardone v. United States*, *308 U.S. 338, 341 (1939)*.  For these reasons, I dissent.

 

 

_____

**LAURA DENVIR STITH, JUDGE**

15